UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60298-CR-SCOLA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RAEES ALAM QAZI.

Defendant.
_____ /

RAEES ALAM QAZI'S MOTION TO SUPPRESS EVIDENCE
DERIVED FROM FISA INTERCEPTS

Raees Alam Qazi hereby files this Motion to Suppress Evidence Derived from the Foreign

Intelligence Surveillance Act ("FISA") intercepts in this case.

From on or about 2011 through 2012, the government intercepted hundreds of telephone calls

involving Raees Qazi and others who were both the targets and subjects of FISA surveillance during

that time period.  At trial, the government may seek to introduce these intercepts that were obtained

under the purported authority of FISA.  *See* DE 10 (Government's Notice of Intent to Use FISA

Information pursuant to 50 U.S.C. §§ 1806(c) and 1825(d)).  Unfortunately, the government alone

has unrestricted access to the affidavits or other papers that were presented to the Foreign

Intelligence Surveillance Court ("FISC") to obtain approval for the surreptitious electronic

surveillance, interception and recording of otherwise private communications and activities.

Consequently, the defense is not aware of when the government applied to the FISC, under what

version of FISA, what information if any was supplied to the FISC, or the limits of any

1

authorizations issued by the FISC. The defense recently has moved through a separate pleading for disclosure of all the FISA applications and orders in this case. *See* DE 45 and 46.  Those motions are pending.

By necessity, therefore, Raees Qazi's instant Motion to Suppress the above-referenced evidence must speculate about the potential illegality regarding the FISA seizure of such items. Without disclosure of any application papers and the resulting orders, the defense, of course, is precluded the opportunity to provide more specific factual and legal challenges to the use of such evidence at trial.[1]

Even in the absence of such disclosures, however, the defense maintains that all FISA derived evidence should be suppressed for the following reasons:

A.    FISA is facially unconstitutional because it violates the Fourth and Fifth Amendments to the United States Constitution;

B.    The FISC application papers fail to demonstrate probable cause to believe that Raees Qazi was a "foreign power" or an "agent of a foreign power"and the FISC application papers fail to demonstrate probable cause to believe that the telephones that were subjected to electronic surveillance were being used or were about to be used by a "foreign power" or an "agent of a foreign power";

C.    The FISC application papers fail to demonstrate that a "significant purpose" of the searches and surveillance was to obtain "foreign intelligence information;

D.    The government failed to minimize electronic surveillance interceptions as required by 50 U.S.C. § 1801(h);

E.    Errors in the use of FISA evidence; and

F.    The affidavits or certifications submitted as part of the FISC application papers were "clearly erroneous" within the meaning of 50 U.S.C. §§ 1805(a)(5) and 1824(a)(5).

_____

[2]Raees Qazi would respectfully request that this Court hold the instant motion until a final ruling is made regarding the disclosure of the FISA applications and orders (DE 45 and 46) and allow him to supplement the instant motion at that time.

A.      **FISA is Facially Unconstitutional**

FISA provides a framework for the use of electronic and other surveillance activities to acquire foreign intelligence information, and was intended to strike a "balance between the need for such surveillance and the protection of civil liberties." *Matter of Kevork*, 788 F.2d 566, 569 (9th Cir. 1986). As originally enacted, FISA allowed the government to obtain an order from the FISC authorizing electronic surveillance or searches targeting a "foreign power" or "an agent of a foreign power" "for the purpose of obtaining foreign intelligence information." 50 U.S.C. § 1805(a)(3)(2000). In October 2001, through the Patriot Act, Congress amended the language of FISA, changing the language that mandated "the purpose" of the search or surveillance to be the acquisition of foreign intelligence information, to requiring that such acquisition be "a significant purpose." 50 U.S.C. § 1804(a)(7)(B) and § 1823(a)(7)(B) (as amended by Pub.L. 107-56, Title II, § 218, Oct. 26, 2001). *See also In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp. 2d 611 (FISA 2002), *reversed in part*, *In re Sealed Case*, 310 F.3d 717 (FISA Rev. 2003).

The Patriot Act amendment sought to break down barriers between criminal law enforcement and intelligence gathering, such that "[f]ederal officers who conduct electronic surveillance to acquire foreign intelligence information may consult with Federal law enforcement officers." *See* 50 U.S.C. § 1806(k)(1)(A)-(C). Congress made clear that this coordination "shall not preclude" the government's certification that a significant purpose of the surveillance is foreign intelligence gathering. *See* 50 U.S.C. § 1806(k)(2).

The government, through this amendment, has been enabled to unconstitutionally conduct surveillance to gather evidence for use in a criminal case without a traditional warrant, as long as the

government asserts that there is a significant purpose in gathering foreign intelligence. While FISA intended to reduce the probable cause requirement only for national security intelligence gathering, the Patriot Act allows the Executive Branch to "bypass the Fourth Amendment" to gather evidence for a criminal prosecution. *See Mayfield v. United States*, 504 F. Supp. 2d 1023, 1036-37 (D. Ore. 2007) (holding FISA as amended to be unconstitutional), *vacated and remanded on other grounds*, 599 F.3d 964 (9th Cir. 2010) (plaintiff lacked standing due to settlement agreement with government).

Prior to the enactment of FISA and the Patriot Act, the United States Supreme Court addressed the applicability of the Fourth Amendment warrant requirement to electronic surveillance conducted for domestic security purposes. *See United States v. United States Dist. Court for Eastern Dist. of Mich. (Keith)*, 407 U.S. 297 (1972). In *Keith*, the Attorney General—without prior judicial approval—authorized electronic surveillance of defendants suspected of involvement in the bombing of a CIA office. *Keith*, 407 U.S. at 299-301. The Supreme Court held that such surveillance violated the Fourth Amendment. *Id*. at 316-17, 320.

In particular, the Court rejected the government's contentions that national security investigations are too subtle and complex for judicial evaluation, and that requiring prior judicial approval would fracture secrecy essential to official intelligence gathering. *Id*. at 318-21. Importantly, the Court directly rejected the Executive Branch's argument that exceptions to the Fourth Amendment warrant requirement should be recognized for domestic security surveillance — the Court held that the decision to conduct electronic surveillance cannot be left to the direction of law enforcement officials. *Id*. at 316-17. Although *Keith* did involve a national security investigation, no foreign element was implicated and the Supreme Court expressly left open the

4

question of the Fourth Amendment's limitations on national security investigations involving the activities of foreign powers or their agents. *Id*. at 321-22. The Supreme Court presciently warned, however, that "[t]he historical judgment, which the Fourth Amendment accepts, is that unreviewed executive discretion may yield too readily to pressures to obtain incriminating evidence and overlook potential invasions of privacy and protected speech." *Id*. at 316-17.[2]

After the Supreme Court's decision in *Keith*, and before either the 2001 amendment of FISA or the *In re Sealed Case* decision, several federal appellate courts recognized an exception to the Fourth Amendment warrant requirement when domestic surveillance was conducted "primarily" for the purpose of gathering foreign intelligence. *See, e.g.*, *United States v. Pelton*, 835 F.2d 1067, 1075-76 (4th Cir. 1987).[3] These courts suggested that traditional Fourth Amendment warrant requirements may be relaxed in investigations undertaken for foreign intelligence purposes if, but only if, the primary purpose of the investigation is to gather foreign intelligence information, as opposed to the purpose of gathering evidence for criminal prosecution. *See, e.g.*, *United States v. Badia*, 827 F.2d 1458, 1464 (11th Cir. 1987).

Because of the 2001 amendment to FISA and the *In re Sealed Case* decision, the issue as to

---

[3] As reported by various media outlets and belatedly acknowledged by the government, following the tragedy of 9-11 then-President Bush authorized the National Security Agency to eavesdrop on "hundreds, perhaps thousands, of people inside the United States without warrants . . . ." *See* http://www.nytimes.com/2005/12/16/politics/16program.html.

[4] *See also United States v. Brown*, 484 F.2d 418, 426 (5th Cir. 1973); *United States v. Butenko*, 494 F.2d 593 (3d Cir. 1974); *United States v. Buck*, 648 F.2d 871 (9th Cir. 1977); *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984) (affirming denial of motion to suppress, but only upon express finding that purpose of the surveillance was foreign intelligence gathering and was not "directed towards criminal investigation or the institution of a criminal prosecution."), *abrogated by statute on other grounds*, 630 F.3d 102 (2d Cir. 2010).

whether the traditional warrant requirement of the Fourth Amendment applies to government investigations undertaken wholly or in part for foreign intelligence purposes must be revisited. In *In re Sealed Case*, the FISC upheld the Fourth Amendment constitutionality of FISA and rejected the long recognized distinction between law enforcement and other lawful methods of protecting national security. *In re Sealed Case*, 310 F.3d at 725, 735. Inexplicably, the court concluded that FISA never established this distinction and suggested that the statute simply had been misread during the previous twenty-five years. *Id*. at 728. The court determined that the "primary purpose test" as enunciated in cases such as those cited above was never constitutionally required, and that the Patriot Act's disavowal of that standard (by use of the term "significant purpose") passed constitutional muster. *Id*. at 742-46. The court conceded, however, that "the constitutional question . . . whether Congress' disapproval of the primary purpose test is consistent with the Fourth Amendment – has no definitive jurisprudential answer." *Id*. at 746.

Although the previously noted *Mayfield* decision has been vacated because of a standing issue, the district court's FISA analysis should be adopted by this Court. In *Mayfield*, the court granted declaratory relief, holding that FISA, as amended by the Patriot Act, is unconstitutional because the statute now permits the Executive Branch to conduct electronic surveillance and searches of "United States persons" without satisfying the probable cause and warrant requirements of the Fourth Amendment. *Mayfield*, 504 F. Supp. 2d at 1042-43. In reaching this decision, the *Mayfield* court thoroughly reviewed, challenged, and rightfully disregarded the FISC's determination and supporting rationale for finding that FISA as amended is constitutionally sound. *Id*. at 1023.

In particular, the *Mayfield* court held that FISA violated the Fourth Amendment because:

● FISA orders may be issued without a showing that a crime has been or is being

committed;

●With respect to the nexus to criminality required by the definition of "agent of a foreign power," the government does not need to establish probable cause regarding each and every element of the allegedly involved crime;

●When the FISC reviews a FISA application, the government is permitted to satisfy most FISA requirements simply by certifying that the requirements are met, without any demonstration of how;

● FISA directs that the reviewing court is not to scrutinize statements contained in the government's certifications in a FISA application and must defer to the certifications unless they are "clearly erroneous."  This procedure allows the government to avoid traditional Fourth Amendment judicial oversight when obtaining search and surveillance orders;

● FISA allows the government to retain and use in criminal cases, the collected information, without providing any meaningful opportunity for defendant to challenge the validity of FISA order;

● The FISA notice provisions are impermissibly broad – the government can conduct searches and electronic surveillance without notifying the target within a reasonable time after such has occurred and, except when criminal prosecution follows and the government intends to use FISA derived evidence, no notice ever is given to the targets of such intrusions;

● FISA does not require any showing of "particularity" in the traditional Fourth Amendment sense, allowing the government to search or conduct electronic surveillance at its broad discretion—essentially providing a "general warrant"; and

7

●FISA authorizes electronic surveillance terms up to 120 days, a violation of the Fourth Amendment duration requirement for criminal investigations.

*Mayfield*, 504 F. Supp. 2d at 1035-43.

For these reasons, Raees Qazi challenges the admissibility and use of FISA-derived material against him at trial and requests the Court find that FISA is facially unconstitutional and that any FISA-derived evidence be suppressed.

**B.     Raees Qazi and His Alleged Activities Were Not Governed by FISA, and FISA Was Therefore Unconstitutional as Applied.**

Even if FISA is determined by the Court to be facially constitutional, the factual circumstances of this investigation did not justify the invocation of FISA procedures to investigate the Qazis' conduct and communications. If the government wanted to investigate the possible commission of a crime by the Qazis, it should have invoked traditional law enforcement investigative techniques, which would have afforded Raees Qazi all of the Fourth Amendment protections that he is entitled to.

Raees Qazi is a citizen of the United States. Although born in Pakistan, he and his father emigrated to the United States in 1994 when Raees was a child.  There is absolutely no evidence in the volumes of discovery provided to date that he was in any way an "agent of a foreign power" as FISA contemplates.

50 U.S.C. § 1805 sets forth the requirements for the issuance of a surveillance order under FISA. The issuing court must, in conformity with this statute, make findings that:

(1) the application has been made by a Federal officer and approved by the Attorney General;

(2) on the basis of the facts submitted by the applicant there is probable cause to

believe that–

(A) the target of the electronic surveillance is a foreign power or agent of a foreign power: *Provided*, that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the First Amendment to the Constitution of the United States; and

(B) each of the  facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(3) the proposed minimization procedures meet the definition of minimization procedures under section 101(h) [50 U.S.C. § 1804(h)]; and

(4) the application which has been filed contains all statements and certifications required by section 104 [50 U.S.C. § 1804] and, if the target is a United States person, the certification or certifications are not clearly erroneous on the basis of the statement made under section 104(a)(7)(E) [50 U.S.C. § 1804(a)(7)(E)] and any other information furnished under section 104(d) [50 U.S.C. § 1804(d)].

50 U.S.C. § 1805 (emphasis added).

An "agent of a foreign power" is defined by the statute, in pertinent part,

as any person who–

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(E) knowingly aids or abets any person in the conduct of activities described in [the subparagraphs above] or knowingly conspires with any person to engage in activities

9

described in [the subparagraphs above].

50 U.S.C. § 1801(b)(2).

The only conceivable definition applicable to Raees Qazi would be found in § 1801(b)(2)(C). That provision, however, in conjunction with § 1801(b)(2)(E) in terms of a conspirator, would require a showing that Raees was acting on behalf of a "foreign power."  That term, in turn, is defined in 50 U.S.C. § 1801(a):

> (1) a foreign government or any component thereof whether or not recognized by the United States;
>
> (2) a faction of a foreign nation or nations, not substantially composed of United States persons;
>
> (3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;
>
> (4) a group engaged in international terrorism or activities in preparation therefore;
>
> (5) a foreign-based political organization, not substantially composed of United States persons;
>
> (6) an entity that is directed and controlled by a foreign government or governments; or
>
> (7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

50 U.S.C. § 1801(a).

Again, the only potentially applicable definition in this case would be § 1801(a)(4); however, such an application would require an assertion by the FISA applicant that Raees Qazi was engaging in preparation for international terrorism on behalf of a group that was, in turn, engaging in preparation for international terrorism. The application could not have established probable cause without first showing what external terrorist group (*i.e.*, what "foreign power") was involved, and

10

then showing how Raees Qazi in any way acted as its knowing agent. *United States v. Hammoud*, 381 F.3d 316, 332 (4th Cir. 2004), *overruled on other ground,* 543 U.S. 1097 (2005). Because there is no evidence that Raees Qazi acted as a "knowing agent" of any terrorist group, any purported application must be deficient.

Furthermore, the purported application also would have to establish probable cause that the telephones that were subjected to electronic surveillance were being used or were about to be used by a "foreign power" or an "agent of a foreign power." Because there is no evidence that the telephones were used or about to be used in this manner, any purported application must be deficient.

**C.  The FISA Applications Failed the "Significant Purpose" Test.**

For the same reasons stated above with respect to the constitutionality of FISA as applied to Raees Qazi in the particular circumstances of this case, the application to the FISC could not have demonstrated that a "significant purpose" of the electronic interceptions and surveillance was to obtain "foreign intelligence information." 50 U.S.C. § 1804(a)(7)(B) and 1823(a)(7)(B). Although the Patriot Act amendments to FISA may have diluted the "primary purpose test" to the lesser standard of "a significant purpose," a purpose based statutory standard still exists. It has not been met in this case.

Simply stated, there was no evidence or probable cause to believe that Raees Qazi or his alleged co-conspirators had any ongoing or even past relationship with any foreign power such that an investigation of their activities would have led to the development of "foreign intelligence information." There also was no evidence or probable cause to believe that Raees Qazi or his alleged co-conspirators were a "foreign power" or "agents of a foreign power," as argued above.  None of the definitions within 50 U.S.C. § 1801(e) ("foreign  intelligence information") apply to any

conceivable set of facts alleged in the indictment.

More importantly, FISA contains a First Amendment exception. No FISA order may issue based upon a finding that a United States person is a foreign power or agent of a foreign power "solely upon the basis of activities protected by the first amendment to the Constitution of the United States . . . ." 50 U.S.C. § 1805(a)(2)(A). A review of the discovery reveals a series of First Amendment activities that, even if taken together, are still activities that cannot form the sole basis of a FISA order. For example, conversations, emails or internet searches regarding Muslim duties (freedom of speech and free exercise of religion) and exercise of a religious duty – whether or not the government deems it a valid exercise of a religious duty (free exercise of religion; non-establishment of religion) should not form the sole basis for a FISA order.

Merely because the government characterizes a First Amendment activity as an illegal exercise of a First Amendment right does not transform the activity into one that can be ignored in a FISA probable-cause analysis. In assessing whether the purported FISA applications were appropriate, and whether the FISA orders were issued upon probable cause and following proper standards, the Court cannot make an implicit value judgment whether the exercise of speech, religion or association was inherently illegal simply because the government anticipated that it would be illegal. Otherwise, the First Amendment distinction which Congress included in FISA makes no sense in comparison with the First Amendment itself.

D.     **Lack of Minimization Procedures**

The proposed minimization procedures contained in FISA applications and orders must meet the statutory requirements of 50 U.S.C. § 1801(h). *See* 50 U.S.C. § 1805(a)(3). Those requirements are:

(h) "Minimization procedures", with respect to electronic surveillance, means--

(1) specific procedures, which shall be adopted by the Attorney General, that are reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of non-publicly available information concerning un-consenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information;

(2)  procedures that require that non-publicly available information, which is not foreign intelligence information, as defined in subsection (e)(1), shall not be disseminated in a manner that identifies any United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance;

(3) notwithstanding paragraphs (1) and (2), procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes; and

(4) notwithstanding paragraphs (1), (2), and (3), with respect to any electronic surveillance approved pursuant to section 102(a) [50 U.S.C. § 1802(a)], procedures that require that no contents of any communication to which a United States person is a party shall be disclosed, disseminated, or used for any purpose or retained for longer than 72 hours unless a court order under section 105 [50 U.S.C. § 1805] is obtained or unless the Attorney General determines that the information indicates a threat of death or serious bodily harm to any person.

50 U.S.C. § 1801(h).

Raees Qazi contends that the government made no effort to adhere to the minimization procedures pursuant to FISA. The government has provided substantial audio surveillance in which Raees Qazi and others engaged in private, non-criminal conversations and actions that provided no indicia that any crime was previously committed, or was about to be committed.  The government made no effort to cease recording or surveillance during those conversations, in violation of FISA. Furthermore, none of these conversations involving Raees Qazi related to "foreign intelligence information" such that the continuation of the surveillance after a brief period did not violate the

minimization procedures.

That the government exceeded the scope and permissible duration of FISA surveillance is further borne out by the discovery process in this case.  The execution of FISA orders has been occurring for more than 25 years, and the manner in which these orders are carried out, primarily by the FBI, is specified in *In re All Matters*: "Information [seized pursuant to a FISA order] is reduced to an intelligible form; if recorded, it is transcribed; if in a foreign language, it is translated; if in electronic or computer storage, it is accessed and printed; if in code, it is decrypted; and if in film or similar media, it is developed and printed." 218 F. Supp. 2d at 617-618.

Early in the discovery process in this case, it became clear to the defense that the government had not prepared transcripts of many recorded conversations – whether FISA-derived or through consensual means. Indeed, as of this date, the defense has not received all of the transcripts the government intends to introduce at trial. Had the government followed the strictures of FISA, however, those transcripts (included translated ones) would have already been in existence prior to the arrest of the defendants.  The government, after determining that the conversations involving Raees Qazi did not involve foreign intelligence information, should have discontinued the FISA surveillance and abided by the minimization procedures.  It did not, and should not now be allowed to utilize such information at trial.

**E.     Errors in the Use of FISA Evidence**

The government has not followed the required procedure prior to its use of FISA materials as evidence in this criminal case. The FISA statute applies as soon as the government wishes to "otherwise use" surveillance results in any "proceeding." 50 U.S.C. § 1806(c). The government, however, used this evidence at the Grand Jury proceedings presumably and in its applications for

14

search warrants certainly to the Court prior to giving notice to the Court and the aggrieved party, Raees Qazi, as required by § 1806(c). Finally, the government failed to obtain from this Court a determination that the FISA evidence sought to be used was obtained and seized lawfully.  50 U.S.C. § 1806(f).

Additionally, the government has not filed, or revealed in discovery to date, the express, written authorization of the Attorney General to use FISA evidence in this case in the criminal prosecution of the crimes charged in the indictment pursuant to 50 U.S.C. § 1806(b).  *Matter of Kevork*, 788 F.2d at 571; *United States v. Megahey*, 553 F. Supp. 1180, 1184 (E.D.N.Y. 1982). Nor has the government filed an affidavit of the Attorney General that the FISA materials used in the past or sought to be used in the future are a matter of national security or otherwise classified by statute pursuant to § 1806(f).  *United States v. Johnson*, 952 F.2d 565, 571 n.4 (1st Cir. 1991), *abrogated by statute on other grounds*, 671 F.3d 329 (3d Cir. 2011).

**F.    "Clearly Erroneous" Certifications**

Raees Qazi contends that the FISA applications were deficient, and the resulting orders invalid, because the government's application failed to include a certification that, in the case of Raees Qazi, a "United States person," the statements and certifications required by 50 U.S.C. § 1804 are not clearly erroneous, or that such certification, if made, was in fact, untrue. 50 U.S.C. § 1805(a)(4).

While the scope of judicial oversight with respect to the issuance of FISA orders is more limited than that of a traditional "neutral and detached magistrate," when deciding motions to suppress, the Court need not blindly accept the government's application certifications.  Because the required certifications include statements that essentially vouch for the veracity of the proffered

15

information as to: the identity of Raees Qazi as a "foreign power" or agent thereof; the use of the facilities or places as instruments of such foreign power or agent; the proposed compliance with minimization procedures; and statements from the Executive confirming that "foreign intelligence information" is at stake, the defendant contends that, in light of his argument advanced above, the government's certifications were clearly erroneous, particularly where other traditional methods of criminal investigation were obviously available to the government at all times during these alleged conspiracies.  Should the Court find that the government applicant's certifications were, in fact, clearly erroneous, then the application was invalid and any evidence obtained as a result of the resulting orders should be suppressed as an invalid exercise of judicial branch authority predicated upon invalid executive branch actions.

Based upon the foregoing Raees Qazi respectfully requests that this Court suppress any and all FISA intercepts obtained in this case.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: s/ Daniel L. Ecarius
      Daniel L. Ecarius
      Supervisory Assistant Federal Public Defender
      Florida Bar No. 719765
      150 W. Flagler Street, Suite 1700
      Miami, FL 33130-1556
      Telephone: (305) 530-7000
      Fax: (305) 536-4559
      E-mail: daniel_ecarius@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on May 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

          /s Daniel L. Ecarius
          Daniel L. Ecarius

17