UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60298-CR-SCOLA

UNITED STATES OF AMERICA,
    Plaintiff,

v.

SHEHERYAR ALAM QAZI,
    Defendant.
_____/

## DEFENDANT'S RESPONSE TO GOVERNMENT'S REPLY CONTAINED IN DE 88

Mr. Qazi, through undersigned counsel, files this response to the government's reply contained in DE 88.

## ARGUMENT

**I. The Government Now Disavows Any Duty To Provide Specific Notice Of Evidence Obtained Or Derived From FAA Surveillance.**

In its reply (DE 88), the government retreats even further from the unambiguous representations it made to the Supreme Court in the *Amnesty* litigation. In doing so, the government abandons the position it assumed in DE 80 by now arguing that it has no statutory duty to provide specific notice of FAA-obtained or FAA-derived evidence under 50 U.S.C. § 1881e(a) and § 1806(c). That is a striking about-face, both because it is a complete reversal and because it confirms the fear Mr. Qazi articulated in his original motion to compel notice: that the government believes it may conduct warrantless surveillance under the FAA's warrantless wiretapping provisions but tell a criminal defendant such as Mr. Qazi only that he has been surveilled under traditional FISA. *See* DE 76 at 8-9, 10, 13, 15-16. Accordingly, Mr. Qazi

1

contends that this Court should reject the government's claimed authority to rebrand its FAA surveillance as traditional FISA surveillance.

In DE 80, the government, in response to Mr. Qazi's suggestion that the government might seek to conceal FAA surveillance beneath a generic FISA notice, assured the Court:

> Defendant has misread 50 U.S.C. § 1881e(a) to incorrectly conclude that it provides the Government with a "license to 'rebrand' or 'relabel' its FAA surveillance as traditional FISA surveillance." . . . Section 1806 of FISA is procedural, and Section 1881e(a) incorporates those procedural rules for application in the event that information obtained or derived from FAA electronic surveillance were to be introduced into evidence or otherwise used by the Government in a proceeding. *Nothing in either Section 1806 or Section 1881e(a) provides a "license to 'rebrand' or 'relabel' FAA surveillance as traditional FISA surveillance,"* and, the Government has not done so here.

DE 80 at 3 (emphasis added). The government thus acknowledged its core obligation to provide specific notice of FAA-obtained or FAA-derived evidence, and it disclaimed any statutory interpretation that would allow it to mask its FAA surveillance. In its reply, however, the government walks away from even this straightforward duty, stating:

> The statute does not on its face require the Government to disclose to Defendants whether the information from "electronic surveillance" that it intends to use was obtained under the authority of sections 702 or 703 [the FAA], or instead under title I of FISA— what the Court has referred to as "traditional FISA."

DE 88 at 2. The government now contends that it is not required to distinguish between FAA and traditional FISA surveillance for the purpose of notice. That is a significant assertion. For the reasons set forth at length in Mr. Qazi's motion to compel notice, such a reading is inconsistent with the text and purpose of the notice statute, 50 U.S.C. §§ 1881e(a), 1806(c), with the Supreme Court's clear ruling and expectation in *Amnesty*, and with the Fourth and Fifth Amendments to

2

the U.S. Constitution. *See* DE 76 at 9-16; *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1154 (2013). *Mr. Qazi should not be forced to guess at the legal authority for the government's interception of their electronic communications. This is the essence of adequate notice, whether one looks to the statute or the Constitution.*

The government's position is all the more striking because of its representations to previous courts. In *Amnesty*, a case focused on *who* had standing to challenge warrantless wiretapping under the FAA, the government repeatedly assured the Supreme Court that criminal defendants subject to such surveillance would have notice of evidence "obtained or derived" from the FAA and the opportunity to bring a challenge. *See Amnesty*, 133 S. Ct. 1138. It provided this assurance twice in its briefs to the Supreme Court and again at oral argument when the Justices pressed the issue. Br. for Petitioner, *Amnesty*, 2012 WL 3090949, at *8; Reply for Petitioner, *Amnesty*, 2012 WL 5078759, at *15; Tr. of Oral Argument at 2-4, *Amnesty*, 133 S. Ct. 1138. Having prevailed, however, the government now seeks to avoid the consequences of those statements by refusing to properly put a criminal defendant like Mr. Qazi on notice. Indeed, the government opposed the plaintiffs' standing in *Amnesty* because their allegations of FAA surveillance were supposedly "wholly speculative," "conjectural," and "hypothetical." Yet it now says that a criminal defendant such as Mr. Qazi is not entitled to specific notice and, instead, should raise an FAA challenge on little more than speculation and pure assertion.[1] *Compare* Br.

---

[1] The government continues to attempt to conflate the basic notice mandated by 50 U.S.C. § 1806(c) with a defendant's access to specific FISA applications, affidavits, and evidence, which may be limited in certain circumstances under 50 U.S.C. § 1806(f). *See* DE 88 at 3 (quoting *United States v. Belfield*, 692 F.2d 141, 148 (D.C. Cir. 1982)). The fact that the government may withhold specific documentary evidence when litigating a motion to suppress is far different from permitting the government to withhold notice of FAA-derived or FAA-obtained evidence altogether. Without notice, a defendant may never have the opportunity to challenge the validity of the underlying search, precisely because the government keeps it hidden from view. *Cf. United States v. Chun*, 503 F.2d 533, 537 (9th Cir. 1974) (stating, in the Title III

3

for Petitioner, *Amnesty*, 2012 WL 3090949, at *18-*37, *with* DE 88 at 3. The government cannot have it both ways; the doctrine of judicial estoppel bars the government from adopting ever-changing, inconsistent positions across courts. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The government should be held to its statutory and constitutional duty to provide notice as well as to the plain meaning of its words in *Amnesty*.

## II.   Mr. Qazi Is Entitled To Notice Of Evidence Derived From FAA Surveillance, Including FISA Evidence Obtained In Reliance On FAA Surveillance.

For the first time the government also disputes, without legal authority or other support, the meaning of the word "derived" in the statutory notice provision. DE 88 at 6-7. Remarkably, it suggests that where investigators expressly rely on FAA surveillance in affidavits seeking a traditional FISA order, the evidence subsequently obtained under that order is not "derived" from the initial FAA surveillance. There is a canon of Fourth Amendment doctrine, incorporated into FISA, that flatly contradicts the government's argument. *See, e.g.*, S. Rep. No. 95-701, at 13 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3982 ("[FISA] embodies a legislative judgment that court orders and other procedural safeguards are necessary to ensure that electronic surveillance by the U.S. government within this country conforms to the fundamental principles of the Fourth Amendment."). Indeed, courts regard the phrase "evidence derived therefrom" as a "well established term of art" in the search context, where the exclusionary rule often bars "the fruit of the poisonous tree." *Chandler v. U.S. Army*, 125 F.3d 1296, 1304 (9th Cir. 1997). In particular, evidence "derived" from an illegal wiretap is "the product of the primary evidence, or that is otherwise acquired as an indirect result of the [wiretap], up to the point at which the

---

context, "Such post-use notice functions to provide individuals with the opportunity to exercise their constitutional right to challenge the validity of a wiretap, and, thereby, the admissibility of evidence obtained or derived therefrom.").

connection with the [wiretap] becomes "so attenuated as to dissipate the taint."" *Id.* (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)). This doctrine, and the accepted meaning of "derived" evidence, pre-dates the passage of FISA. For instance, in a case presenting a sequence of electronic interceptions and wiretap orders much like this one, the Supreme Court stated:

> It is apparent from the foregoing that the communications intercepted pursuant to the extension order were evidence *derived* from the communications invalidly intercepted pursuant to the initial order. In the first place, the application sought and the order granted authority to intercept the communications of various named individuals not mentioned in the initial order. It is plain from the affidavit submitted that information about most of these persons was obtained through the initial illegal interceptions. . . . *That the extension order and the interceptions under it were not in fact the product of the earlier electronic surveillance is incredible.*

*United States v. Giordano*, 416 U.S. 505, 531-32 (1974) (emphasis added) (addressing Title III wiretap). The government's suggestion in this case is equally incredible. It cannot define away a quintessential form of "derived" evidence in order to avoid giving adequate notice of FAA surveillance. As Mr. Qazi has pointed out before, that would open an enormous loophole, allowing the government to sidestep an FAA challenge simply by shielding its surveillance behind a FISA application. The statutory notice requirement plainly encompasses evidence "derived" from FAA surveillance. If the government relied on this surveillance to obtain a FISA order in the present case, as Senator Feinstein's congressional testimony strongly suggests may be the case, Mr. Qazi is entitled to an FAA notice.[2]

      Finally, the government continues to mischaracterize Mr. Qazi's motion for notice as a discovery device that would trigger the procedures in 50 U.S.C. § 1806(f). Mr. Qazi's motion does not ask the government to disclose the content of any FISA application, order, or supporting

---

[2] *See* Testimony of Senator Diane Feinstein, 158 Cong. Rec. S8393 (daily ed. Dec. 27, 2012) (naming Mr. Qazi and his brother), reprinted in DE 67 at pages 3-4.

5

affidavit. Mr. Qazi asks only for the minimum required by the statutory notice provision, 50 U.S.C. § 1806(c), which encompasses notice of FAA surveillance even when the government simply intends to introduce FISA evidence "derived" from that surveillance. That notice requirement is not the creation of an inventive litigant; rather, it reflects the careful balance struck by Congress when it authorized the government to engage in foreign intelligence surveillance. Notice, given even after the fact, ensures that a criminal defendant like Mr. Qazi has an opportunity to challenge the validity of the underlying search. *Cf. United States v. Eastman*, 465 F.2d 1057, 1063 n.13 (3d Cir. 1972) (noting that Title III's notice provision, 18 U.S.C. § 2518(9), is "intended to provide the defendant whose telephone has been subject to wiretap an opportunity to test the validity of the wiretapping authorization"). The government could satisfy its notice obligation by simply filing a document similar to its traditional FISA notice, but specific to the FAA, such as:

> The United States hereby provides notice to the defendant, and to the Court, that pursuant to Title 50, United States Code, Sections 1881e(a) and 1806(c), the United States intends to offer into evidence, or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained or derived from electronic surveillance conducted pursuant to Section 702 of the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1881a.

This form would not reveal the content of any specific FISA application, order, or affidavit. It would, however, put a criminal defendant such as Mr. Qazi on notice that the government did, in fact, rely on FAA surveillance to obtain traditional FISA evidence. Similarly, if the government does not intend to use evidence obtained or *derived* from FAA surveillance against Mr. Qazi, it can resolve Mr. Qazi's motion for notice and comply with this Court's Order (DE 77) by simply stating as much.

## CONCLUSION

For the foregoing reasons, as well as those contained in Mr. Qazi's prior pleadings, *see* DE 67, 76, and 83, Mr. Qazi contends that there is no basis to hold the Court's Order (DE 77) in abeyance, or to strike its directive requiring the government to provide notice of FAA surveillance. Mr. Qazi therefore respectfully requests that this Court deny the government's motion for reconsideration (DE 80).

                                        Respectfully submitted,

                                        /s Ronald S. Chapman
                                        Ronald S. Chapman (Bar No. 898139)
                                        ronchapman@bellsouth.net
                                        400 Clematis Street, Suite 206
                                        West Palm Beach, FL 33401
                                        Tel (561) 832-4348
                                        Fax (561) 832-4346
                                        Attorney for Sheheryar Qazi

## Certificate of Service

Undersigned counsel certifies that on May 25, 2013 he electronically filed this motion with the Clerk of Court using CM/ECF.

                                        /s Ronald S. Chapman
                                        Ronald S. Chapman