**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-60298-Cr-Scola/O'Sullivan**

UNITED STATES OF AMERICA,
         Plaintiff,

vs.

SHEHERYAR ALAM QAZI,
         Defendant.
_____/

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED OR
DERIVED FROM ELECTRONIC SURVEILLANCE OR PHYSICAL SEARCH
CONDUCTED PURSUANT TO THE FOREIGN INTELLIGENCE
SURVEILLANCE ACT OF 1978 (FISA), AS AMENDED, 50 U.S.C. §§ 1801-1812
AND 1821-1829, AS WELL AS CONDUCTED PURSUANT TO THE FISA
AMENDMENTS ACT OF 2008[1]**

        Pursuant to the Fourth and Fifth Amendments to the United States Constitution,

Federal Rule of Criminal Procedure 12(b)(3)(C), 50 U.S.C. § 1806(e),[2] and 50 U.S.C.

_____

[1] Undersigned counsel contacted opposing counsel who stated that the government objects to the Court granting this motion.

[2] 50 U.S.C. § 1806(e) states:

        Motion to suppress

        Any person against whom evidence obtained or derived from an electronic surveillance to which he is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the evidence obtained or derived from such electronic surveillance on the grounds that--

1

§ 1825(f),[3] Mr. Qazi, through undersigned counsel, files this motion and in support thereof states the following:

1. Mr. Qazi is charged by indictment with one count of conspiracy to provide material support to terrorists and one count of conspiring to use a weapon of mass destruction.

---

**(1)** the information was unlawfully acquired; or

**(2)** the surveillance was not made in conformity with an order of authorization or approval.

Such a motion shall be made before the trial, hearing, or other proceeding unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion.

[3] 50 U.S.C. § 1825(f) states:

Motion to suppress

**(1)** Any person against whom evidence obtained or derived from a physical search to which he is an aggrieved person is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the evidence obtained or derived from such search on the grounds that--

**(A)** the information was unlawfully acquired; or

**(B)** the physical search was not made in conformity with an order of authorization or approval.

**(2)** Such a motion shall be made before the trial, hearing, or other proceeding unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion.

2

2.  On December 6, 2012, the government filed a Notice of Intent to Use Foreign Intelligence Surveillance Act Information (DE 10) in which it stated that the government "intends to offer into evidence, or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained or derived from electronic surveillance or physical search conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829."

3.  Mr. Qazi is requesting that this Court suppress any and all evidence that was obtained or derived from electronic surveillance or physical search conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829, *as well as* pursuant to the FISA Amendments Act of 2008 (hereinafter "FAA").  50 U.S.C. § 1881a.

## STATUTORY FRAMEWORK

**Electronic Surveillance under FISA**

In 1968, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"). *See* 18 U.S.C. §§ 2510–2522. Title III authorizes the federal government to obtain warrants for surveillance of oral, wire, and electronic communications for criminal investigation purposes, upon a showing of probable cause that the target of the surveillance has engaged, or will engage in a federal crime, using the subject mode of communication. 18 U.S.C. § 2518. Title III's warrant requirement was based on the Supreme Court's recognition that individuals have reasonable expectation of privacy in such communications, which is protected by the Fourth Amendment to the U.S. Constitution.  *See Berger v. New York*, 388 U.S. 41 (1967); *Katz v. United States*,

389 U.S. 347 (1967). Title III explicitly did not address foreign intelligence surveillance. 18 U.S.C. § 2511.

In 1978, Congress enacted the Foreign Intelligence Surveillance Act ("FISA"). 50 U.S.C. §§ 1801-1812. FISA authorizes the federal government to obtain warrants for surveillance of oral, wire, and electronic communications for foreign intelligence purposes, upon a showing of probable cause that the target of the surveillance is a foreign power or an agent of a foreign power – defined in several ways, including a U.S. person engaging in clandestine intelligence activities on behalf of a foreign power or its agent. Additionally, the government must show that the places that the surveillance is directed are used by the foreign power or agent thereof. To conduct a physical search under FISA, the government must meet both of those requirements, and additionally show probable cause to believe the physical location contains foreign intelligence information.

FISA's provisions represented a balance between the preservation of Fourth Amendment privacy rights, and the government's national security need to monitor agents of a foreign power operating in the United States. *See In re Kevork*, 788 F.2d 566, 569 (9th Cir. 1986) (FISA "was enacted in 1978 to establish procedures for the use of electronic surveillance in gathering foreign intelligence information. . . . The Act was intended to strike a sound balance between the need for such surveillance and the protection of civil liberties.") (internal quotations omitted).[4]

---

[4]  *See, e.g.,* FINAL REPORT OF THE SELECT COMMITTEE 3 TO STUDY GOVERNMENTAL OPERATIONS WITH RESPECT TO INTELLIGENCE ACTIVITIES, S. Rep. No. 94-755, 94th Cong., 2d Sess. (1976); *Commission on CIA Activities Within the United States*, Report to the President (1975) (commonly referred to as the "Rockefeller Commission Report") (noting the need for FISA in light of abuses of surveillance during Watergate era); FOREIGN INTELLIGENCE SURVEILLANCE ACT REPORT, TOGETHER WITH SUPPLEMENTAL, ADDITIONAL, AND

In that context, FISA authorizes the federal government to engage in "electronic surveillance" in order to acquire "foreign intelligence information." Specifically, a federal officer acting with the approval of the Attorney General may make an application to a specialized court – known as the Foreign Intelligence Surveillance Court (hereinafter "FISC") – for a judicial order authorizing the electronic surveillance.[5] 50 U.S.C. § 1804. After making certain findings, the FISC judge may issue an *ex parte* order approving the electronic surveillance. 50 U.S.C. § 1805(a).

The statute defines "electronic surveillance" to include, among other things, the acquisition of the contents of wire or radio communications sent by or intended to be received by a United States citizen or legal permanent resident who is in the United States. 50 U.S.C. § 1801(f)(1)-(4), (i). The statute defines "foreign intelligence information," in relevant part, to mean information concerning a United States person that is necessary to the ability of the U.S. to protect against attacks or hostile acts by a foreign power or agent of foreign power, or to protect similarly against terrorism or clandestine intelligence gathering activities. 18 U.S.C. § 1801(e)(1)-(2).

The statute requires the government's application to the FISA Court to be made under oath by a federal officer and contain certain information and certifications. 50

---

DISSENTING VIEWS, H.R. Rep. No. 95-1283, at 15, 95th Cong., 2d Sess. (1978) (noting that FISA was calibrated to balance between the "competing demands of the President's constitutional powers to gather intelligence deemed necessary to the security of the Nation, and the requirements of the Fourth Amendment."). *See also United States v. Belfield*, 692 F.2d 141, 145 (D.C. Cir. 1982) ("[r]esponding to post-Watergate concerns about the Executive's use of warrantless electronic surveillance, Congress, with the support of the Justice Department, acted in 1978 to establish a regularized procedure for use in the foreign intelligence and counterintelligence field").

[5] The statute also authorizes electronic surveillance without court orders in limited circumstances not applicable here. *See* 50 U.S.C. § 1802(a)(1)(A); 1805(e), 1811.

U.S.C. § 1804(a). The application must include the identity of the federal officer making the application, § 1804(a)(1); the identity or description of the target, § 1804(a)(2); and õa statement of the facts and circumstances relied upon by the applicant to justify his belief that: the target of the electronic surveillance is a foreign power or an agent of a foreign power; and each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used by a foreign power or an agent of a foreign power.ö § 1804(a)(3). Also, the application must provide a õstatement of the proposed minimization procedures,ö § 1804(a)(4), and a õdescription of the nature of the information sought and the type of communications or activities to be subjected to surveillance.ö § 1804(a)(5).

In addition, the application must include a number of õcertifications,ö including: the certifying official deems the information sought to be foreign intelligence information, § 1804(a)(6)(A); the purpose of the surveillance is to obtain foreign intelligence information, § 1804(a)(6)(B); such information cannot reasonably be obtained by normal investigative techniques, § 1804(a)(6)(C); a designation of the type of foreign intelligence information being sought according to the categories describe in section 1801(e), § 1804(a)(6)(D); and a statement of the basis for the certification that: the information sought is the type of foreign intelligence information designated and such information cannot reasonably be obtained by normal investigative techniques, § 1804(a)(6)(E). Finally, the application must state the means by which surveillance will be effected, § 1804(a)(7); facts concerning related FISA applications, § 1804(a)(8); and the period of time for which the electronic surveillance is required to be maintained,

§ 1804(a)(9). In addition, the Attorney General must personally review the application and determine whether it satisfies the criteria and requirements set forth in FISA. § 1804(d); *see* § 1805(a)(1).

In considering an application for electronic surveillance pursuant to FISA, the FISC must make certain findings in order to grant the application. 50 U.S.C. § 1805. Among these findings are that the application was made by a federal officer and approved by the Attorney General, § 1805(a)(1); that there exists probable cause to believe that õthe target of the electronic surveillance is a foreign power or an agent of a foreign power . . . and . . . each of the facilities or places at which the electronic surveillance is directed is being used or is about to be used by a foreign power or agent of a foreign power,ö § 1805(a)(2)(A-B); that the proposed minimization procedures meet the statutory definition under section 1801(h), § 1805(a)(3); and that the application contains all required statements and certifications, § 1805(a)(4).

Also, in accordance with section 1805(a)(4), if a target is a õUnited States person,ö[6] the FISC must determine whether the õcertificationsö under section 1804(a)(6)(E) ó namely that the information sought is õthe type of foreign intelligence information designated,ö and the information õcannot reasonably be obtained by normal investigative techniquesö ó are õnot clearly erroneous.ö In addition, section 1805(a)(2)(A) provides õthat no United States person may be considered a foreign power . . . solely upon the basis of activities protected by the first amendment . . .ö Orders authorizing FISA wiretaps are issued for certain specified periods of time, but may be extended pursuant to additional applications. §§ 1805(d)(1)-(2).

---

[6] As a U.S. citizen, Sheheryar Qazi qualifies as a õUnited States personö under § 1801(i).

**Physical Searches under FISA**

In 1994, Congress amended the FISA statute to also allow for authorization of physical searches. Pub. L. No. 103-359, 108 Stat. 3444 (Oct. 14, 1994). FISA defines õphysical searchö as:

> Any physical intrusion within the United States into premises or property (including examination of the interior of property by technical means) that is intended to result in a seizure, reproduction, inspection, or alteration of information, material, or property, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes.

50 U.S.C. § 1821(5). The provisions regarding physical searches, 50 U.S.C. §§ 1821-1829, track those dealing with electronic surveillance, and the requirements for applications and authorizations are largely the same.

There are, however, a few significant differences in what the government must do when seeking to perform physical searches under FISA. An application for an order authorizing physical searches under FISA must include õa description of the premises or property to be searched and of the information, material, or property to be seized, reproduced, or altered,ö 50 U.S.C. § 1823(a)(2), as well as õa statement of the facts and circumstances relied upon by the applicant to justify the applicantøs belief that . . . the premises or property to be searched contains foreign intelligence information.ö § 1823(a)(3)(B). õWhere the physical search involves a search of the residence of a United States person, the Attorney General shall state what investigative techniques have previously been utilized to obtain the foreign intelligence information concerned and the degree to which these techniques resulted in acquiring such information.ö § 1823(a)(7). Orders authorizing physical searches must direct õthat the Federal officer conducting the

physical search promptly report to the court the circumstances and results of the physical search.ö § 1824(b)(2)(E).

## ARGUMENT

## I. TO ENSURE EFFECTIVE REVIEW IN THIS CASE, THE FISA MATERIALS SHOULD BE DISCLOSED TO DEFENSE COUNSEL

As an initial matter, Mr. Qazi requests that this Court order the disclosure of the subject FISA applications to him in order to allow him to make an effective motion to suppress the FISA-derived evidence. Neither Mr. Qazi nor his counsel has seen the subject FISA applications because they were made *ex parte* and were not subsequently disclosed. Therefore, Mr. Qazi makes this motion without the benefit of necessary and relevant facts, but rather upon information and belief. As discussed below, disclosure in this case is authorized by statute and required by due process of law.

In the event that this court does not authorize disclosure, the level of specificity usually required in a motion to suppress should be relaxed. The lack of access to the underlying FISA materials presents a significant impediment to the defendantøs capacity to challenge FISA surveillance with particularity. Given that FISA applications, applications for extension, orders, and related materials have not been disclosed to defense counsel, the grounds for relief set forth below represent defense counseløs best estimate of the deficiencies in the use of FISA in this case. A relaxation in the particularity requirement is appropriate when the defendant is deprived of access to the material facts. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 870-71, 873 (1982)) (holding that when the defense was denied access finding material facts from a deported

witness under government's exclusive control, the requirements for specificity should be relaxed accordingly).

## II. MR. QAZI HAS STANDING TO CHALLENGE THE FISA SURVEILLANCE AND PHYSICAL SEARCHES

Mr. Qazi has standing to move to suppress the FISA-derived evidence used against him in this criminal prosecution. Under FISA, an "aggrieved person," is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance," or one "whose premises, property, information, or material was subject to physical search." 50 U.S.C. §§ 1801(k), 1821(2). An "aggrieved person" may move to suppress evidence obtained or derived from FISA electronic surveillance or physical searches on the grounds that "the information was unlawfully acquired" or "the surveillance was not made in conformity with an order of authorization or approval." §§ 1806(e)(1)-(2), 1825(f)(1). Here, because Mr. Qazi was the direct target of FISA electronic surveillance, he is an "aggrieved person" under §§ 1806(k) and 1821(2), and he moves to suppress FISA-derived evidence because, based on the limited facts known to him, it was unlawfully acquired and the surveillance made did not conform to the order of authorization.

## III. EVIDENCE DERIVED FROM THE FISA SURVEILLANCE AND PHYSICAL SEARCHES OF MR. QAZI SHOULD BE SUPPRESSED BECAUSE FISA IS UNCONSTITUTIONAL UNDER THE FOURTH AMENDMENT

The FISA statute does not pass constitutional muster under the Fourth Amendment because both the õsignificant purposeö standard and the standard for physical searches fail to meet minimum Fourth Amendment requirements. Therefore, the statute is facially invalid, and the Court should suppress all FISA- derived evidence.

### A. The Patriot Act Amendments, Requiring Only That Foreign Intelligence Gathering Be a "Significant Purpose" of FISA Surveillance and Physical Searches, Violate the Fourth Amendment

The USA PATRIOT Act amendments to FISA, § 218 (2001), codified at 50 U.S.C. § 1804(a)(6)(B) [hereinafter õPatriot Actö], which broadened FISAøs application to domestic criminal investigations with a significant foreign intelligence purpose, have rendered the statute unconstitutional. Orders authorizing surveillance or physical searches pursuant to FISA do not satisfy the Fourth Amendmentøs warrant requirements of probable cause, particularity, and reasonableness. Although courts have established a foreign intelligence exception to the Fourth Amendmentøs warrant requirements, they have limited the exception to cases in which foreign intelligence is the primary purpose of the use of FISA. The Patriot Act amendments, requiring only that foreign intelligence be a õsignificant purposeö of the investigation, bring the use of FISA outside the foreign intelligence exception, and thus violate the Fourth Amendmentøs warrant requirements.

The Fourth Amendment requires a warrant for all searches, including electronic

surveillance, conducted for the purpose of a domestic criminal investigation. Such a warrant must be supported by probable cause that a crime is being or will be committed by the target, using the subject means or method of communication. *Berger*, 388 U.S. at 55-56. The warrant must also state with particularity the places or items to be searched or seized. U.S. CONST. amend. IV; *see also Marron v. United States*, 275 U.S. 192, 195 (1927). A warrant ordered by a neutral magistrate based upon a showing of probable cause is the irreducible minimum of Fourth Amendment protection of privacy from arbitrary searches. *Katz*, 389 U.S. at 356; *see also Dalia v. United States*, 441 U.S. 238, 255 (1979).

FISA departs from the Fourth Amendment's minimum requirements in two respects. First, FISA authorization is not based upon the Fourth Amendment's probable cause standard for other searches and seizures. FISA requires only a showing that the surveillance target is a foreign power or agent of a foreign power. *See* 50 U.S.C. § 1804(a)(3)(A). Second, FISA warrants do not satisfy the Fourth Amendment's particularity requirement. The Fourth Amendment requires a warrant to describe with particularity the things to be seized and the places to be searched. *See Berger*, 388 U.S. at 58. By contrast, no such showing of particularity is required for the issuance of a FISA warrant.

Although FISA warrants depart from the Fourth Amendment's minimum protections in these two crucial respects, courts have concluded that FISA-derived evidence may be used in criminal prosecutions, subject to an important limitation. FISA's requirement that the intelligence be conducted for the "primary purpose" of foreign intelligence, not criminal investigation, limits the instances in which FISA-derived

evidence may be used in criminal prosecutions. *See United States v. Truong Dinh Hung*, 629 F.2d 908, 915 (4th Cir. 1980) (foreign intelligence exception to Fourth Amendment requirements in FISA is limited to cases in which "the surveillance is conducted primarily for foreign intelligence reasons."). Numerous courts have cemented FISA's "primary purpose" of foreign intelligence gathering as an axiomatic requirement for a Fourth Amendment exception. *See e.g., United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991) ("Although evidence obtained under FISA subsequently may be used in criminal prosecutions . . . the investigation of criminal activity cannot be the primary purpose of the surveillance. [FISA] is not to be used as an end-run around the Fourth Amendment's prohibition of warrantless searches."); *United States v. Butenko*, 494 F.2d 593, 606 (3d Cir. 1974) (en banc) ("Since the primary purpose of these searches is to secure foreign intelligence information, a judge, when reviewing a particular search must, above all, be assured that this was in fact its primary purpose and that the accumulation of evidence of criminal activity was incidental."); *United States v. Bin Laden*, 126 F. Supp. 2d 264, 277-78 (S.D.N.Y. 2000) (finding foreign intelligence exception to the Fourth Amendment's warrant requirement for searches abroad where the search is "conducted -primarily- for foreign intelligence purposes").

In 2001, Section 218 of the Patriot Act amended 50 U.S.C. § 1804(a)(6)(B) to allow the issuance of a FISA warrant so long as a "significant" purpose of the electronic surveillance is to gather foreign intelligence information. Patriot Act § 218. The amendment effectively lowered the threshold foreign intelligence purpose standard, required to obtain a FISA warrant, from "primary purpose" to "significant purpose," potentially allowing FISA warrants even when the intelligence gathered is primarily for

criminal prosecution purposes. *See In re Sealed Case* No. 02-001, 310 F.3d 717, 735 (FISA Ct. Rev. 2002). Under the "significant purpose" standard, if the government can show that FISA-derived evidence was gathered for a secondary foreign intelligence purpose, it can circumvent the heightened probable cause requirement associated with criminal warrants and execute surveillance using FISA's relaxed probable cause standard. *See id.*

FISA's "significant purpose" standard violates the Fourth Amendment because it allows the use of FISA warrants, obtained with lower probable cause showings, in cases where criminal prosecution is the primary purpose for obtaining the intelligence.[7]   In other words, the government may claim that a "significant purpose" of FISA surveillance in a particular case was for foreign intelligence gathering even though the "primary purpose" was for criminal investigation. By allowing that end-run around the limits on criminal investigations, FISA infringes upon the Fourth Amendment's probable cause and particularity requirements.

Finally, FISA's significant-purpose standard fails to meet the Fourth Amendment standard of reasonableness because it fails to balance citizens' reasonable expectation of privacy with the need of the government to gather foreign intelligence information. *Katz*, 389 U.S. at 322-23 (indicating that the test for determining whether or not surveillance conducted in the name of national security complies with the requirements of the Fourth Amendment is whether the surveillance is "reasonable both in relation to the legitimate

---

[7] Even if the significant purpose standard is declared constitutional, the Patriot Act provisions dismantling the "wall" between criminal and foreign intelligence information sharing will remain intact. *See* Patriot Act § 203(b) & (d) (2001), codified at 18 U.S.C. § 2517(6) & 50 U.S.C. § 403-5d. Further, nothing would prevent the government from obtaining a warrant for criminal purposes under Title III. *See* 18 U.S.C. §§ 2510-2522.

need of Government for intelligence information and the protected rights of our citizens.ö); *Camara v. Mun. Court*, 387 U.S. 523, 536-37 (1967) (indicating that any reasonable Fourth Amendment analysis must account for individual interests). In its initial design, FISA deliberately set out to find balance between national security interests with individual liberty. However, the standard imposed by the Patriot Act wholly eliminates that balance. FISA was not intended to allow the government to engage in surveillance devoid of a primary foreign intelligence purpose. *See In re Sealed Case*, 310 F.3d at 736 (ö[T]he FISA process cannot be used as a device to investigate wholly unrelated ordinary crimes.ö). Therefore, FISAøs ösignificant purposeö standard violates the Fourth Amendment.

In 2002, the Foreign Intelligence Surveillance Court of Review (FISCR) upheld the constitutionality of the post-PATRIOT Act FISAøs ösignificant purposeö standard. For reasons explained below, the FISCR courtøs reasoning was flawed in several respects.

First, the FISCR court itself acknowledged that öthe constitutional question presented by this case-whether Congressø disapproval of the primary purpose test is consistent with the Fourth Amendment--*has no definitive jurisprudential answer.*ö *In re Sealed Case*, 310 F.3d at 746 (emphasis added). It further posited that the öprocedures and government showings required under FISA, if they do not meet the minimum Fourth Amendment warrant standards, certainly come close.ö *Id*. Especially in light of the procedural irregularities stemming from review in FISCR, the courtøs concession about the lack of doctrinal clarity and its unfounded supposition that close is good enough render its interpretation highly unpersuasive.

Second, the FISCR Court's discussion of the Patriot Act's effect on the "significant purpose" versus "primary purpose" standard is nothing more than dicta. The FISCR court's opinion came in an appeal concerning FISA minimization procedures only. In the case below, the court had considered the Attorney General's proposed minimization procedures to implement the Patriot Act, and rejected in part and rewrote in part the procedures. *In re All Matters Submitted to the Foreign Intelligence Surveillance Court*, 218 F. Supp.2d 611, 625 (FISC 2002). The government appealed this decision in *In Re Sealed*, where the FISCR reviewed a FISA application in which the FISC rejected the government's request to follow the Attorney General's proposed procedures and granted the FISA application on condition that the government obey the FISC's order in *In Re All Matters. In re Sealed Case*, 310 F.3d. at 720-21. Therefore, the issue on appeal was whether the proposed minimization procedures were "reasonably designed," consistent with the need of the government "to obtain, produce, or disseminate –foreign intelligence information' as defined in 1801(h) and 1821(4) of [FISA]." *See In re All Matters*, 218 F. Supp.2d at 625. Any discussion of the significant purpose standard is therefore of minimal precedential value.

Third, the *In re Sealed* opinion arose from a non-adversarial proceeding in the FISCR, where only the government was permitted to appear. Because the statute only permits the government to appeal a FISCR decision to the Supreme Court, the decision has stood since 2002 without further appeal. *See* 50 U.S.C. § 1803(b). These highly unusual procedures sharply conflict with the values inherent in traditional court proceedings and render the decision unpersuasive and of little precedential value to a proper Article III court, such as this one.

Fourth, as set forth below, the FISCR's Fourth Amendment reasoning is incorrect, and its reliance on the special-needs exception is misplaced.

**B. Physical Searches Based Solely on FISA Authorization Violate the Fourth Amendment's Warrant Requirements**

Even if this Court finds that the "significant purpose" standard is constitutional under the Fourth Amendment, physical searches based solely on FISA authorization are nevertheless unconstitutional. FISA orders for physical searches do not meet the Fourth Amendment's warrant requirements, nor can the physical searches be justified under the special needs or exigency exceptions, or the general reasonableness test. Although surveillance can sometimes enjoy lesser scrutiny under the Fourth Amendment, *see, e.g.,* Stored Communications Act, 18 U.S.C. 2701-2712 (2012), physical searches retain the highest level of protection under Fourth Amendment law. *See Olmstead v. United States*, 277 U.S. 438, 464 (1928) (discussing the history of the Fourth Amendment as contemplating searches of "material things-the person, the house, his papers, or his effects"). Therefore, even if electronic surveillance under FISA passes constitutional muster with a significant purpose standard, physical searchers under FISA cannot reach the Fourth Amendment threshold under the significant purpose standard.

Under the Fourth Amendment, warrants issue for all domestic criminal investigations, supported by probable cause that a crime is or will be committed by the target, and stating with particularity the places or items to be seized or searched. U.S. CONST. amend. IV; *Berger*, 388 U.S. at 55-56; *Marron*, 275 U.S. at 195. FISA orders for physical searches meet neither of these requirements.

First, FISA-authorized physical searches do not rest on the Fourth Amendment probable cause standard. Rather, authorization for physical searches under FISA only requires reason to believe that the intended target is a foreign power or agent of a foreign power, and that the property to be searched is connected to that person. *See* 50 U.S.C. §§ 1823(a)(3)(A) & (C). Second, while authorization for physical searches describes the places to searched, it fails to describe with particularity the things to be seized. *See* 50 U.S.C. § 1823(a)(3)(B). In fact, although the authorization requires reason to believe that the place to be searched contains foreign intelligence information, there is no requirement that the foreign intelligence information be the object of the search, nor any specificity as to the nature of that foreign intelligence information. *Id*.

There are only two relevant exceptions to the Fourth Amendment in this circumstance: the special-needs exception and the exigency exception. However, neither of these exceptions applies to searches authorized under FISA.

First, FISA-authorized searches do not come within the special-needs exception. The special-needs exception provides that when special needs outside of normal law enforcement make the warrant and probable cause requirements impracticable, a warrantless search may be justified. *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Generally, courts have read this rule to apply only in situations outside the scope of traditional law enforcement and criminal investigation. *See, e.g., City of Indianapolis v. Edmond*, 531 U.S. 32, 43 (2000) (declining to extend the special needs exception to a non-border highway checkpoint seeking to interdict narcotics because the checkpoints merely õadvance[ed] a general interest in crime controlö); *Ferguson v. City of Charleston*, 532 U.S. 67, 83 (2001) (declining to extend the special needs exception to

hospital mandated drug tests on pregnant women because the "immediate objective of the searches was to generate evidence for law enforcement purposes," despite an ultimate goal to prevent substance abuse in mothers).

FISA surveillance post-2001 does not fall beyond the normal need of law enforcement and criminal investigation. Prior to 2001, FISA required a primary purpose of foreign intelligence. Patriot Act § 218 (2001), codified at 50 U.S.C. § 1804(a)(6)(B). Arguably, under this standard, FISA's programmatic purpose may have been protecting the nation against terrorism and espionage by foreign powers. Such a purpose may well have fallen beyond the normal need of law enforcement and criminal investigation, and exempted FISA from probable cause warrant requirements under the Fourth Amendment's special need exception. However, after 2001, the significant purpose standard has, in many cases, made FISA's programmatic purpose law enforcement. Despite a potential long-term goal of stopping espionage, the immediate objective of post-2001 FISA is often generating evidence for law enforcement purposes. Such an objective does not fall within the parameters of the special needs exception.

In a footnote commenting on its interpretation of the FISA surveillance statutes, the FISCR implied in dicta that the special needs exception might apply to FISA physical searches, as well as FISA surveillance. *In Re Sealed Case*, 310 F.3d at 722 n.7. However, the question of physical searches under FISA was not before the court. Id. Moreover, as explained above, that conclusion is incorrect. 504 F. Supp. at 1041-42.

Second, FISA-authorized searches do not come within the exigency exception. The Ninth Circuit has defined the exigency exception as allowing a warrantless search in "those circumstances that would cause a reasonable person to believe that entry (or other

relevant prompt action) was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.ö *United States v. McConney*, 728 F.2d 1195, 1199 (1984).

Such a determination is fact dependent, and cannot uniformly apply to the vast array of potential circumstances arising under FISAøs physical search authorization. While there may be some circumstances that would fit within the exigency exception, the entire category of physical searches under FISA cannot. Therefore, on its face, FISA cannot fall within the Fourth Amendmentøs exigency exception.

Finally, the FISA-authorized physical searches cannot be excused on the basis of a õgeneral reasonablenessö standard. *See, e.g., Samson v. California*, 547 U.S. 843, 852-53 (2006) (finding that a warrantless search of a paroleeøs home came within the Fourth Amendmentøs general reasonableness standard because a parolee by definition has a lesser expectation of privacy, and the government interest in ensuring that the parolee does not commit additional crimes is substantial). The õgeneral reasonablenessö test requires balancing the degree to which the search intrudes upon the individualøs privacy and the degree to which the search is needed to promote legitimate government interests. *Al-Haramain Islamic Foundation, Inc. v. United States Dept. of Treasury*, 686 F.3d 965, 994 (9th Cir. 2011). Like exigent circumstances, a general reasonableness inquiry is fact-dependent, and cannot excuse the entire category of physical searches under FISA from violating the Fourth Amendment.

**IV. EVIDENCE DERIVED FROM THE FISA SURVEILLANCE AND PHYSICAL SEARCHES OF MR. QAZI SHOULD BE SUPPRESSED BECAUSE THE USE OF FISA IN THIS CASE FAILED TO SATISFY CONSTITUTIONAL AND STATUTORY REQUIREMENTS**

Should this Court find that the Patriot Act Amendments to FISA and FISA-authorized physical searches are not facially invalid, the FISA-derived evidence should nevertheless be suppressed in this case. The use of FISA surveillance and physical searches on Mr. Qazi was unconstitutional as applied to the facts of this particular case, and the Government did not satisfy all of FISA's statutory requirements, rendering the use of FISA surveillance and physical searches illegal and invalid.

**A. The Use of FISA Surveillance and Physical Searches Did Not Have a "Significant Purpose" of Obtaining Foreign Intelligence Information**

Foreign intelligence gathering was not the primary or significant purpose of the government's FISA surveillance and physical searches of Mr. Qazi. The statute requires the Attorney General to certify that foreign intelligence is a "significant purpose" of the surveillance sought. 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).  In Mr. Qazi's case, however, the government's FISA application lacked the "significant purpose" of foreign intelligence gathering. Rather, as evidenced by the subsequent criminal investigation conducted with the use of two undercover sources posing as Mr. Qazi's friends, the government's significant, primary, and indeed sole purpose was that of criminal

investigation. Likewise, if the government re-applied for an extension of the FISA authorization for Mr. Qazi, there was no primary or significant foreign intelligence purpose at that later time once the FBI investigation of Mr. Qazi was underway.

**B. The Physical Searches of Mr. Qazi's Property, Based Solely on FISA Authorization, Cannot Be Justified Under Any Fourth Amendment Exception**

Even if this Court were to find that physical searches under FISA can be categorically justified under a Fourth Amendment exception, the facts of Mr. Qazi's case do not fall within a Fourth Amendment exception. Specifically, Mr. Qazi's case does not fall within the either the special-needs or exigent-circumstances exception to the Fourth Amendment, nor does it fall within the general reasonableness test. Therefore, the FISA-authorized search was in violation of Mr. Qazi's Fourth Amendment rights and the evidence derived therefrom should be suppressed.

First, Mr. Qazi's case does not fall within the Fourth Amendment's special-needs exception. As discussed above, the special-needs exception allows law enforcement to conduct a reasonable search in absence of the warrant and probable cause requirements when a) the circumstances are outside the scope of normal law enforcement and b) meeting the warrant and probable cause requirements is impracticable. *Griffin*, 483 U.S. at 873; Ferguson, 532 U.S. at 83.

Such circumstances do not exist in this case. Foreign intelligence was not a significant purpose of the investigation in the present case. Instead, the government's purpose was that of criminal investigation as evidenced by the government's knowledge

that Mr. Qazi was not communicating with any foreign power, and the use of undercover sources posing as Mr. Qazi's friends in order to investigate Mr. Qazi's alleged crimes. Because the investigation in the present case was within the scope of traditional law enforcement and criminal investigation, there is no special-needs exception available. *See Ferguson*, 532 U.S. at 83; *see also Kindhearts for Charitable Humanitarian Development, Inc. v. Geithner*, 647 F. Supp. 2d 857, 882-83 (N.D. Ohio 2009) (finding that a special needs exception could not justify OFAC blocking actions). Consequently, the government violated the Fourth Amendment when it obtained FISA authorization to physically search Mr. Qazi's property, and the evidence obtained during that search should be suppressed.

Second, Mr. Qazi's case does not fall within the Fourth Amendment's exigency exception. The exigent-circumstances exception allows law enforcement to conduct a search without a warrant when a reasonable person would believe that entry was necessary to prevent physical harm, destruction of relevant evidence, escape of the suspect, or some other action frustrating law enforcement efforts. *McConney*, 728 F.2d at 1199.

No such circumstances are present in the instant case.  At the time of the physical search, Mr. Qazi was being monitored through FISA-authorized surveillance and the FBI's undercover sources. With such extensive monitoring, there could have been no reasonable fear that Mr. Qazi would somehow frustrate law enforcement efforts.

**C. The Authorization to Conduct FISA Surveillance and Physical Searches Lacked Probable Cause Under the Statute**

Before a FISA order can be issued authorizing surveillance or physical searches, the statute requires that the government make a number of showings of probable cause to the FISC. Those probable cause requirements, as set forth below, could not have been met in Mr. Qazi's case, therefore rendering the use of FISA invalid. Accordingly, the FISA-derived evidence should be suppressed.

**1. There was no probable cause to believe that Mr. Qazi was an agent of a foreign power.**

Before authorizing FISA surveillance or physical searches, the FISA Court must find, among other things, probable cause to believe that "the target of the electronic surveillance is a foreign power or an agent of a foreign power." 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A). In the criminal context, it is well-settled that probable cause requires "a reasonable ground for belief of guilt," and that "the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Because FISA does not require any showing of criminal activity, the probable cause standard is directed not at the target's alleged commission of a crime, but at the target's alleged status as "a foreign power or an agent of a foreign power." Therefore, to satisfy probable cause in this case, the government must have shown a reasonable ground for belief that Mr. Qazi was an agent of a foreign power.

FISA section 1801(a) defines the term "foreign power" to include, in relevant part, "a foreign government or any component thereof, whether or not recognized by the United States." 50 U.S.C. § 1801(a)(1). Here, presumably the government argued in its FISA application that Mr. Qazi was an agent of a foreign power.

Section 1801(b) defines "agent of a foreign power," in relevant part, as:

(2) any person who—

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States; . . . or

(E) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C).

50 U.S.C. § 1801(b)(2).[8]  Here, presumably the government argued in its FISA application that Mr. Qazi either engaged in "clandestine intelligence gathering" for a foreign government, acted as an agent of a foreign government, or conspired with a foreign government in the conduct of such activities.   But Mr. Qazi did none of these things; therefore probable cause did not exist to believe that he was an agent of a foreign power.

---

[8] The remaining sub-sections of 1801(b)(2) concern knowingly engaging in sabotage or international terrorism, see § 1801(b)(2)(C), and entering the United States under a false or fraudulent identity, see § 1801(b)(2)(D), neither of which are relevant to the alleged acts or charges in the present case. Likewise, the definitions in § 1801(b)(1) pertain only to non U.S. citizens or legal residents, and therefore do not apply to Mr. Qazi, who is a U.S. citizen.

**2. The FISA applications and authorizations were based on Mr. Qazi's**

**protected First Amendment rights.**

The FISA authorization in this case was improperly based on Mr. Qazi's protected First Amendment activity. The FISA statute expressly prohibits finding probable cause for a United States citizen like Mr. Qazi based solely upon First Amendment activities. 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A) (". . . Provided, that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States; . . .").

FISA legislative history makes clear that the provision excludes "any activity which consists solely of the lawful exercise of first amendment rights of speech, petition, assembly, and association," and that "lawful political activities should never be the sole basis for a finding of probable cause to believe that a U.S. person is an agent of a foreign power." S.REP. No. 95-701 (1978). The drafters further noted that "the bill is not intended to authorize electronic surveillance when a United States person's activities, even [though] secret and conducted for a foreign power, consist entirely of lawful acts." Id.

**3. There was no probable cause to believe that the physical property searched**

**contained foreign intelligence information.**

Before authorizing a physical search under FISA, FISA Court must find probable cause to believe that the property to be searched contains foreign intelligence information.  *See* 50 U.S.C. § 1823(a)(3)(B). Section 1801(e), defines "foreign

intelligence information,ö in relevant part, as information necessary to the United Statesø ability to protect against various threats, including clandestine intelligence activities, by an agent of a foreign power. *See* 50 U.S.C. § 1801(e)(1)(A)-(C). In the instant case, however, such probable cause did not exist prior to the government obtaining authorization to conduct a physical search under FISA.

**D. The FISA Applications May Have Lacked the Statements and Certifications Required by Statute**

This Court should closely examine each FISA application in order to ensure that they satisfy each of the statuteøs requirements. öThe procedural steps provided in the Act require =strict adherence,ø and öutmost scrutiny must be exercised to determine whether wiretap orders conform to [the statutory requirements].ö *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001).

**1. The FISA applications may not have included the required statements**

When reviewing the FISA applications, the court must ensure that any application for an order approving FISA surveillance or physical searches meets all of the criteria under 50 U.S.C. §§ 1804(a)[9], 1823(a)[10], including, but not limited to, statements setting forth a

---

[9] 50 U.S.C. § 1804(a) provides:

Each application for an order approving electronic surveillance under this subchapter shall be made by a Federal officer in writing upon oath or affirmation to a judge having jurisdiction under section 1803 of this title. Each application shall require the approval of the Attorney General based upon his finding that it satisfies the criteria and requirements of such application as set forth in this subchapter. It shall includeô

(1) the identity of the Federal officer making the application;

(2) the identity, if known, or a description of the specific target of the electronic surveillance;

(3) a statement of the facts and circumstances relied upon by the applicant to justify his belief thatô

> (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power; and

> (B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;

(5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification or certifications by the Assistant to the President for National Security Affairs, an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate, or the Deputy Director of the Federal Bureau of Investigation, if designated by the President as a certifying officialô

> (A) that the certifying official deems the information sought to be foreign intelligence information;

> (B) that a significant purpose of the surveillance is to obtain foreign intelligence information;

> (C) that such information cannot reasonably be obtained by normal investigative techniques;

> (D) that designates the type of foreign intelligence information being sought according to the categories described in section 1801 (e) of this title; and

> (E) including a statement of the basis for the certification thatô

> > (i) the information sought is the type of foreign intelligence information designated; and

> > (ii) such information cannot reasonably be obtained by normal investigative techniques;

28

(7) a summary statement of the means by which the surveillance will be effected and a statement whether physical entry is required to effect the surveillance;

(8) a statement of the facts concerning all previous application that have be made to an judge under this title involving any of the persons, facilities, or places specified in the application, and the action taken on each previous application; and

(9) a statement of the period of time for which the electronic surveillance is required to be maintained, and if the nature of the intelligence gathering is such that the approval of the use of electronic surveillance under this title should not automatically terminate when the described type of information has first been obtained, a description of facts supporting the belief that additional information of the same type will be obtained thereafter.

[10] 50 U.S.C. § 1823(a) provides:

Each application for an order approving a physical search under this subchapter shall be made by a Federal officer in writing upon oath or affirmation to a judge of the Foreign Intelligence Surveillance Court. Each application shall require the approval of the Attorney General based upon the Attorney General's finding that it satisfies the criteria and requirements for such application as set forth in this subchapter. Each application shall include—

(1) the identity of the Federal officer making the application;

(2) the identity, if known, or a description of the target of the search, and a description of the premises or property to be searched and of the information, material, or property to be seized, reproduced, or altered;

(3) a statement of the facts and circumstances relied upon by the applicant to justify the applicant's belief that—

(A) the target of the physical search is a foreign power or an agent of a foreign power;

(B) the premises or property to be searched contains foreign intelligence information; and

(C) the premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;

description of the  nature of the information sought and the type of communications or activities to be subjected to surveillance and stating the proposed minimization procedures. Additionally, since the physical searches involved a search of the residence of a United States person, the government must include a statement from the Attorney General describing õwhat investigative techniques [had] previously been utilized to

---

(5) a statement of the nature of the foreign intelligence sought and the manner in which the physical search is to be conducted;

(6) a certification or certifications by the Assistant to the President for National Security Affairs, an executive branch official or officials designated by the President from among those executive branch officers employed in the area of national security or defense and appointed by the President, by and with the advice and consent of the Senate, or the Deputy Director of the Federal Bureau of Investigation, if designated by the President as a certifying officialô

    (A) that the certifying official deems the information sought to be foreign intelligence information;

    (B) that a significant purpose of the search is to obtain foreign intelligence information;

    (C) that such information cannot reasonably be obtained by normal investigative techniques;

    (D) that designates the type of foreign intelligence information being sought according to the categories described in section 1801 (e) of this title; and

    (E) includes a statement explaining the basis for the certifications required by subparagraphs (C) and (D);

(7) where the physical search involves a search of the residence of a United States person, the Attorney General shall state what investigative techniques have previously been utilized to obtain the foreign intelligence information concerned and the degree to which these techniques resulted in acquiring such information; and

(8) a statement of the facts concerning all previous applications that have been made to any judge under this subchapter involving any of the persons, premises, or property specified in the application, and the action taken on each previous application.

obtain the foreign intelligence information concerned and the degree to which [those] techniques resulted in acquiring such information." 50 U.S.C. § 1823(a)(7). This Court should review any and all FISA applications to determine compliance with §§ 1804(a) and 1823(a). To the extent that the initial application and/or subsequent applications did not meet these requirements, the FISA-derived evidence should be suppressed.

## 2. The FISA applications may not have included the required certifications

In addition to checking whether every statement required by FISA was included in each application, this Court should also review the FISA applications to determine whether they contain all of the certifications required by sections 1804(a)(6) and 1823(a)(6).

The Court should examine one certification with particular care, *i.e.*, that the FISA authorization was necessary because "such information [could not] reasonably be obtained by normal investigative techniques." 50 U.S.C. §§ 1804(a)(6)(C), 1823(a)(6)(C). Since Mr. Qazi is a naturalized United States citizen, if this certification is found to be "clearly erroneous on the basis of the statement made under [sections 1804(a)(7)(E)(ii) and 1823(a)(6)(E)]" the FISA order should not have been granted, and the FISA-derived evidence should be suppressed.

Although courts have not analyzed FISA's "necessity" requirement, they have done so with the parallel requirement found in Title III, 18 U.S.C. § 2518(1)(c), and that analysis is relevant here. See *United States v. Koyomejian*, 946 F.2d 1450, 1456 (9th Cir. 1991) ("in drafting FISA Congress used Title III as its model, particularly for procedures relating to necessity."). In the Title III context, examples of normal investigative

techniques include: physical surveillance; the use of confidential informants; the use of grand jury subpoenas and/or interviews; search warrants; pen registers; telephone records; and the use of undercover officers. *United States v. Bailey*, 607 F.2d 237, 242 (9th Cir. 1979). The Title III necessity requirement was õnot enacted to force the government to exhaust all other investigative procedures before resorting to a request to wiretap. On the other hand, electronic surveillance may not be used as the first step in a criminal investigation. [The necessity requirement] serves to ensure that electronic surveillance is not used in situations where traditional investigative techniques would suffice to expose the crime.ö *United States v. Orozco*, 630 F. Supp. 1418, 1507 (S.D. Cal. 1986) (internal citations omitted).

In this case, the government not only could have, but did, use such normal investigative techniques as physical surveillance, confidential informants, search warrants, and bank records. For the government to assert that the information it sought could not be obtained through normal investigative techniques while simultaneously employing such techniques shows that the certification required in its FISA applications was, on its face, clearly erroneous, thus rendering the resulting FISA order(s) invalid.

Alternatively, if the government thought it needed to use electronic surveillance, it should have sought an order under Title III rather than FISA since Congress did not intend for FISA to replace Title III for domestic criminal investigations. *See In re Sealed Case*, 310 F.3d at 738. The government should not be allowed to circumvent the more stringent requirements of Title III electronic surveillance by simply asserting, without any basis, that a significant purpose of its investigation is to collect foreign intelligence.

**E. The Government May Have Failed to Set out And/ Or Comply with the Minimization Procedures Required by Statute**

In order to obtain a valid FISA order, the government must include in its application a "statement of the proposed minimization procedures." 50 U.S.C. §§ 1804(a)(4), 1823(a)(4). The purpose of these minimization procedures is to (a) ensure that surveillance is reasonably designed to minimize the acquisition and retention of private information regarding people who are being wiretapped; (b) prevent dissemination of non-foreign intelligence information; and (c) prevent the disclosure, use, or retention of information for longer than seventy-two hours unless a longer period is approved by Court order. 50 U.S.C. § 1801(h). The FISC must find that the government's proposed minimization procedures comply with sections 1805(a)(3) and 1824(a)(3). As FISA involves particularly intrusive electronic surveillance,[11] protection of private information through mandated minimization procedures is critically important.

In this case, the FISA applications may not have contained adequate minimization procedures or, if they did, those procedures may not have been followed. This Court should therefore review the adequacy of both proposed and implemented minimization procedures.

**F. The FISA Applications May Have Been Based on Illegitimate And/Or Illegal Sources of Information**

This Court should determine whether the information contained in the government's FISA applications was generated by illegitimate and/or illegal sources and

---

[11] FISA interception is a "24/7" operation in which all conversations are captured, with minimization occurring later and in other forms.

means, such as the constitutionally-infirm FISA Amendments Act or the Patriot Act provisions. Additionally, this Court should require the government to disclose whether information in the FISA applications, information in any way underlying the FISA applications, or information used in the investigation of Mr. Qazi, originated from any of the illegitimate surveillance mechanisms listed below.

**1. The FISA applications may have been based on information obtained through surveillance based on the FISA Amendments Act**

The Court should examine whether the FISA applications and other materials contain, or were based on, the authority provided in 50 U.S.C. §1881a, enacted in 2008 as part of the FISA Amendments Act of 2008, Pub. L. No. 110-261 (2008) [hereinafter öFAAö], or whether the government in this case conducted any surveillance of Mr. Qazi or gathered any evidence based on the FAA.

Under the FAA, unlike the traditional FISA warrant application, the government need not identify the particular targets or facilities to be monitored in its application for surveillance authorization. *See Amnesty Int'l USA v. Clapper*, 133 S. Ct. 1138 (2013) (discussing the differences between the FAA and FISA). Rather, the Attorney General (öAGö) and Director of National Intelligence (öDNIö) need only submit written certification and affidavits generally attesting that öa significant purpose of the acquisition is to obtain foreign intelligence information.ö Id.; 50 U.S.C. § 1881a(g)(2)(A)(v). The targeting procedures are designed to ensure that the surveillance is limited to persons located outside of the United States. *Id.* § 1881a(d)(1), 1881a(g)(2)(A)(i)(I).

The FAA provisions, codified at 50 U.S.C. §1881a, raise several constitutional issues. Most significantly, even if the court finds that traditional FISA warrants satisfy the Fourth Amendment's probable cause requirements, the FAA authorization process certainly does not. The FAA authorizes the targeting of non-U.S. persons without any indication that they are suspected of being an agent of a foreign power, suspected of terrorism, suspected to pose any national security threat, or suspected of any other criminal offense, so long as the collection of foreign intelligence information is a significant purpose of the surveillance. 50 U.S.C. § 1881a(g)(2); *see also Clapper*. Thus, the FAA contains no meaningful probable cause requirement.

In addition, the FAA authorizes extremely broad and sweeping forms of surveillance. *See Clapper*. Given the difficulty of determining the locations of the senders and receivers of communications, the government can monitor conversations between foreign surveillance targets and U.S. citizens so long as they are not aware of the fact that one of the parties involved is a U.S. citizen or is located within the United States. *See* 50 U.S.C. § 1881a(b). These provisions eviscerate the Fourth Amendment requirement that warrants be issued only upon prior judicial authorization based on an individualized determination of probable cause, and particularizing the place to be searched and the items to be seized. *See Dalia*, 441 U.S. at 255.

Additionally, the FAA fails to meet Fourth Amendment warrant requirements in that it fails to provide any form of meaningful juridical review. The FAA makes the FISC review virtually meaningless by failing to provide adequate details about the targets of surveillance to the FISC, and leaves the determination of individualized monitoring exclusively to the Executive branch. *See Clapper*. The FISC is left only to determine

whether or not the appropriate certifications are made. *Id.; see also* §§ 1881a(i)(2), 1881a(i)(3)(A).

If any part of the FISA surveillance was conducted pursuant to §1881a, Mr. Qazi moves to suppress any interceptions, and their fruit. Accordingly, the Court should examine the nature, genesis, and provenance of the information in the FISA application, and compel the government to disclose whether any such information was the product of surveillance authorized pursuant to the FAA.

**2. The FISA applications may have been based on information obtained**

**through surveillance based on the Patriot Act**

This Court should also examine whether any information in the FISA applications was the product of surveillance requested and conducted pursuant to the authority provided in the Patriot Act. Enacted in October 2001, the Patriot Act modified existing law and created new authorities for electronic surveillance and foreign intelligence gathering, including: permitting õrovingö surveillance, Patriot Act § 206 (codified at 50 U.S.C. § 1805); allowing for an application for FISA surveillance when foreign intelligence gathering is a õsignificantö rather than õprimaryö purpose, § 218 (codified at 50 U.S.C. §§ 1804, 1823); expanding the Posse Comitatus Act exceptions, § 104 (codified at 18 U.S.C. § 2332e); authorizing õsneak and peekö search warrants, § 213 (codified at 18 U.S.C. § 3103a); permitting nationwide and perhaps worldwide execution of warrants in terrorism cases, § 220 (codified at scattered sections of Titles 18, 31, and 50); and easing government access to confidential information, § 505 (codified at 18 U.S.C. § 2709, 12U.S.C. § 3414, 15 U.S.C. § 1681u) & § 507 (codified at 20 U.S.C. §

1232). *See also* Charles Doyle, THE USA PATRIOT ACT: A SKETCH, Congressional Research Service 2002, available at http://www.fas.org/irp/crs/RS21203.pdf.

These new provisions raise serious constitutional concerns. If the information contained in the FISA applications was the product of surveillance requested and conducted pursuant to these provisions contained in the Patriot Act, Mr. Qazi moves to suppress any resulting interceptions and their fruit.

**3. The FISA applications and materials may have contained or been based on unreliable "raw intelligence reports"**

The Court should determine whether the FISA applications or materials were based on raw intelligence. Raw intelligence is unreliable because it is untested and unverified. *See Parhat v. Gates*, 532 F.3d 834, 848-50 (D.C. Cir. 2008) (finding that raw evidence presented without backup documents or reliability assessments was unreliable and insufficient to meet the procedures required in Combatant Status Review Tribunal); *Bensayah v. Obama*, 610 F.3d 718, 726 (D.C. Cir. 2010) (finding that there was not enough corroborative evidence to support reliance on raw evidence in a habeas proceeding). Raw intelligence that is speculative and unverified cannot form the basis for probable cause. *See Parhat*, 532 F.3d at 848-50 (ordering the release of Parhat because of a lack of necessary evidence to prove his enemy combatant status, after the finding that the only evidence presented was unreliable raw intelligence).

**G. The FISA Applications May Have Contained Intentional or Reckless Falsehoods or Omissions, Requiring a *Franks* Hearing**

The Supreme Court's landmark decision in *Franks v. Delaware,* 438 U.S. 154 (1978), established the circumstances under which the target of a search may obtain an evidentiary hearing concerning the veracity of the information set forth in a search warrant affidavit. As the *Franks* Court instructed:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statements are necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 156-57.

*Franks* also sets a similar standard for suppression following the evidentiary hearing:

> In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 156; *see Blackmon*, 273 F.3d at 1208-10 (applying *Franks* to Title III wiretap application); *United States v. Meling*, 47 F.3d 1546, 1553-56 (9th Cir. 1995) (same); *United States v. Duggan*, 723 F.2d 59, 77 n.6 (2d Cir. 1984) (suggesting that *Franks* applies to FISA applications under Fourth and Fifth Amendments); *United States v. Hammond*. 351 F.3d 765, 770-71 (6th Cir.2003) (applying *Franks* principles).

The *Franks* principles apply to omissions as well as to false statements. *See, e.g., United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004); *United States v. Atkin*,

107 F.3d 1213, 1216-17 (6th Cir. 1997). Omissions will trigger suppression under *Franks* if they are deliberate or reckless, and if the search warrant affidavit, with omitted material added, would not have established probable cause. *See, e.g. id.*

There may well have been significant omissions or reckless statements in the FISA application(s) in the present case. Absent undisputable evidence to the contrary, a *Franks* hearing is appropriate.

Without the opportunity to review the FISA applications, Mr. Qazi is unable to identify specific false statements or material omissions in those applications. That lack of access prevents Mr. Qazi from making the showing that *Franks* ordinarily requires. Nevertheless, the possibility that the government has submitted FISA applications with intentionally or recklessly false statements or material omissions is hardly speculative. For instance, in 2002, in *In re All Matters*, 218 F. Supp. 2d at 620-21, the FISC reported that beginning in March 2000, the Department of Justice (ö DOJ ö) had confessed ö error in some 75 FISA applications related to major terrorist attacks directed against the United States. The errors related to misstatements and omissions of material facts,ö including: ö 75 FISA applications related to major terrorist attacks directed against the United States ö contained ö misstatements and omissions of material facts ö; the government øs failure to apprise the FISC of the existence and/or status of criminal investigations of the target(s) of FISA surveillance; and improper contacts between criminal and intelligence investigators with respect to certain FISA applications. 218 F. Supp. 2d at 620-21.

According to the FISC, ö [i]n March of 2001, the government reported similar misstatements in another series of FISA applications . . .ö *Id.*, at 621. A report issued March 8, 2006 by the DOJ Inspector General stated that the FBI found apparent

violations of its own wiretapping and other intelligence-gathering procedures more than 100 times in the preceding two years. *See* Report to Congress on Implementation of Section 1001 of the USA Patriot Act, March 8, 2006 (hereinafter ōDOJ IG Reportö), *available at* http://www.usdoj.gov/oig/special/s0603/final.pdf.

For the reasons stated above, a *Franks* hearing, and disclosure of the underlying FISA materials are necessary in order to provide Mr. Qazi with the opportunity to prove that the affiants before the FISC intentionally or recklessly made materially false statements and omitted material information from the FISA applications.

## V. THE COURT SHOULD DIRECT THE GOVERNMENT TO PROVIDE THE FISA APPLICATIONS AND MATERIALS TO MR. QAZI BECAUSE THE STATUTE AND DUE PROCESS REQUIRE DISCLOSURE IN THIS CASE

Disclosure to Mr. Qazi of the FISA applications and underlying materials is not always authorized or appropriate, but for the reasons set forth below, disclosure in this case is not only appropriate, but is required by the FISA statute and the Due Process Clause.

### A. Disclosure of the FISA Materials to the Defense is Necessary Under 50 U.S.C. §§ 1806(f), 1825(g)

Sections 1806(f) and 1825(g) authorize this Court to disclose FISA materials to the defense under certain circumstances. According to FISAǿs legislative history, disclosure may be ōnecessaryö under section 1806(f) where:

> The court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as "indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of non foreign intelligence information, calling into question compliance with the minimization standards contained in the order."

*United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (*quoting* S. REP. NO. 701, 95th Cong., 2d Sess. 64 (1979)) (emphasis added); *see, e.g., United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987) (same); *Duggan*, 743 F.2d at 78 (same).

Here, disclosure of the FISA applications and materials is justified and indeed necessary, for several reasons:

1. With access to the FISA applications, Mr. Qazi could more ably demonstrate that the requisite probable cause relating to "an agent of a foreign power" was not met.

2. Mr. Qazi could more ably demonstrate that the FISA application was based upon protected First Amendment activity.

3. Mr. Qazi could more ably demonstrate that the information underlying the FISA application was obtained via illegal means.

4. Mr. Qazi could help identify procedural irregularities, especially with respect to minimization procedures.

5. Circumstances like the ones involving Mr. Qazi, where records include a significant amount of non-foreign intelligence information, are exactly those that Congress envisioned would necessitate disclosure.

If the FISA application and materials were disclosed to undersigned counsel, there would be no threat of disclosure to the public or to unauthorized persons.  Undersigned counsel has been issued a security clearance after having been the subject of an exhaustive background check by the FBI.  Additionally, this Court has previously issued a protective order (DE 64) that undersigned counsel assented to in writing (DE 82).

**B. Disclosure of the FISA Materials to the Defense is Necessary Under 50 U.S.C. §§ 1806(g), 1825(h), and the Due Process Clause**

Separately, Mr. Qazi is entitled to disclosure of the FISA applications, orders, and related materials under 50 U.S.C. §§ 1806(g) and 1825(h), which expressly incorporate the Fifth Amendment Due Process Clause, and provide that ö[i]f the court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure.ö 50 U.S.C. §§ 1806(g), 1825(h) (emphasis added); *See also United States v. Spanjol*, 720 F. Supp. 55, 57 (E.D. Pa. 1989) (ö[u]nder FISA, defendants are permitted discovery of materials only to the extent required by due process. That has been interpreted as requiring production of materials mandated by [*Brady*], essentially exculpatory materialsö).

Respectfully submitted,


/s/ Ronald S. Chapman
Ronald S. Chapman (Bar No. 898139)
400 Clematis Street, Suite 206
West Palm Beach, FL 33401
Tel (561) 832-4348
Fax (561) 832-4346
Email:  ronchapman@bellsouth.net
Attorney for defendant Sheheryar Alam Qazi


**<u>Certificate of Service</u>**

Undersigned counsel certifies that on May 28, 2013 this motion was electronically filed with the Clerk of Court using CM/ECF, and it was electronically transmitted to all counsel of record.


/s/ Ronald S. Chapman
Ronald S. Chapman