UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60298-Cr-Scola/O'Sullivan

UNITED STATES OF AMERICA,
      Plaintiff,

vs.

SHEHERYAR ALAM QAZI,
      Defendant.
_____/

# DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DE 144

Mr. Qazi, through undersigned counsel, files this Notice of Supplemental Authority in Support of DE 144 and states the following:

1. Mr. Qazi is charged by indictment with one count of conspiracy to provide material support to terrorists and one count of conspiring to use a weapon of mass destruction.

2. On September 10, 2013, Mr. Qazi filed a Reply to Government's Response to Defendants' Motion for Reconsideration of the Court's Order Granting *In Camera, Ex Parte* Proceeding (DE 131). *See* DE 144.

3. Mr. Qazi is now filing the instant notice because on October 16, 2013 a significant news report was published in the *New York Times*— one that bears directly on Mr. Qazi's efforts to compel notice of evidence derived from surveillance under the FISA Amendments Act ("FAA"), 50 U.S.C. § 1881a.[1] *See* Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013, http://nyti.ms/1esJy1o (hereinafter "NYT Article" and

---

[1] It is because the New York Times article was published just one week ago that Mr. Qazi is only now filing this notice of supplemental authority.

1

attached as Exhibit "A"). The article confirms many of the arguments contained in Mr. Qazi's several filings on this issue, particularly DE 144, and shows that the government has—for years and as a matter of policy— failed to provide notice to criminal defendants such as Mr. Qazi as required by law.

The article makes plain something that Mr. Qazi has argued before this Court since May of this year: the government has systematically failed to provide criminal defendants with notice of FAA-derived evidence, based on a narrow and legally unjustifiable interpretation of its notice obligations. In particular, the article describes a Department of Justice policy of withholding notice from criminal defendants in all but the most limited circumstances. This policy directly conflicted with assurances that the Solicitor General gave to the Supreme Court in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013). When the Solicitor General eventually learned of this policy after the Supreme Court's decision, he concluded that the government's policy "could not be legally justified." NYT Article. Lawyers in other intelligence and law enforcement agencies reportedly concurred that the Department of Justice's policy was not supportable. *See id.*

The New York Times article does not spell out the full details of the government's notice policy, either past or present, but it does highlight the very deficiencies identified in Mr. Qazi's various motions, particularly DE 144. For one, it makes clear that for years the Department of Justice applied a narrow and self-serving definition of "derived from" in order to avoid its notice obligation in criminal cases. *See id.*; DE 144 at 12-14. In fact, it appears that the Department of Justice read the phrase "derived from" entirely out of FISA, when officials decided that the government would have to disclose the use of FAA surveillance "*only* if it introduced a recorded phone call or intercepted e-mail gathered *directly* from the program." NYT Article (emphasis

2

added). That, of course, conflicts with the plain language of FISA, which provides for notice when information has been "obtained or derived from" electronic surveillance of the defendant.[2] 50 U.S.C. § 1806(c).

The Department of Justice apparently based its policy on the mistaken belief that foreign-intelligence searches were excepted from the constitutional principles routinely applied in "ordinary criminal investigations." NYT Article. That is not true, especially where the fruit of these searches is used to support a *criminal* prosecution like this one. *See* DE 76 at 10-12. Moreover, the policy described in the article contradicts the vague assurances that the government provided to the Court in its most recent filing on this issue. *See* DE 131 at 3 n.2 (stating that, in determining what information is "derived" from FAA surveillance, the appropriate standards "are similar to" those appropriate in the context of Title III surveillance).

While the government's policy has apparently been modified as a result of the internal debate that occurred over the summer, at least two looming questions remain: *First*, the government still has not provided any defendant with notice of FAA-derived surveillance, even months later, casting doubt on the extent of any policy change. *Second*, the government still has not made clear its current FAA notice policy, and thus it may still be depriving criminal defendants of the notice to which they are entitled under both the statute and the Constitution. In particular, neither criminal defendants such as Mr. Qazi nor the Court know what definition of "derived" the government has now adopted, nor what type of notice defendants may receive.

---

[2] Because the key phrase "derived from" appears in the original FISA statute, 50 U.S.C. § 1806(c), the New York Times article also leaves open the question of whether the government's misreading has affected its provision of notice even in cases involving only traditional FISA surveillance—i.e., where no FAA surveillance occurred. That possibility makes it all the more important that this Court compel the government to explain how it has interpreted its notice obligation under FISA.

3

This latest revelation demonstrates that the Court should not permit the government to police itself when it comes to Mr. Qazi's right to notice of FAA evidence. Judging whether evidence is properly considered derivative of FAA surveillance is the kind of analysis that this Court is best-equipped to make in this case— based on rigorous standards and neutral fact-finding, rather than a secret and self-serving government policy.

Respectfully submitted,

/s/ Ronald S. Chapman
Ronald S. Chapman (Bar No. 898139)
400 Clematis Street, Suite 206
West Palm Beach, FL 33401
Tel (561) 832-4348
Fax (561) 832-4346
Email: ronchapman@bellsouth.net
Attorney for defendant Sheheryar Qazi

**Certificate of Service**

Undersigned counsel certifies that on October 23, 2013 this notice and attachment was electronically filed with the Clerk of Court using CM/ECF, and it was electronically transmitted to all counsel of record.

/s/ Ronald S. Chapman
Ronald S. Chapman