UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-60298-CR-BLOOM/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAEES ALAM QAZI a/k/a "Shan," and
SHEHERYAR ALAM QAZI,

    Defendants.
                                                 /

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on the Defendant Raees Qazi's Motion to Suppress Any Written or Oral Admission or Confession (DE# 166, 3/13/14). This matter was referred to the undersigned by the Honorable Robert N. Scola, United States District Court Judge for the Southern District of Florida.[1] (DE# 167, 3/14/14). Having held an evidentiary hearing on June 23, 2014 and carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully recommends that the Defendant Raees Qazi's Motion to Suppress Any Written or Oral Admission or Confession (DE# 166, 3/13/14) be DENIED.

## BACKGROUND

The defendant is charged by indictment with conspiring to provide material support to terrorists in violation of Title 18, United States Code, Section 2339A(a), and conspiring to use a weapon of mass destruction in violation of Title 18, United States Code, Section 2332a(a). See Indictment (DE# 1, 11/30/12).

On March 13, 2014, the defendant filed the Defendant Raees Qazi's Motion to

---

[1]The case has been reassigned to the Honorable Beth Bloom. (DE# 221, 6/30/2014).

Suppress Any Written or Oral Admission or Confession (DE# 166, 3/13/14).  On April 2, 2014, the government filed the Government's Response to Defendant Raees Alam Qazi's Motion to Suppress Any Written or Oral Admission or Confession. (DE# 174, 4/2/2014).

On June 23, 2014, the undersigned held an evidentiary hearing. The government presented the testimony of Federal Bureau of Investigation ("FBI") Special Agent David Clancy.  The defendant did not present any witness.  The following two exhibits were admitted into evidence: Government's Exhibit 1 (Federal Bureau of Investigation Advice of Rights dated November 29, 2012) and Government's Exhibit 2 (five pages containing 8 color photographs).

### FINDINGS OF FACT

In the early afternoon on November 29, 2012, Special Agent Clancy encountered Raees Alam Qazi (hereinafter referred to as "Mr. Qazi") shortly after his arrest and transported the defendant to the FBI's Miami Field Office.  Special Agents Clancy and Michael Ferlazzo locked up their guns outside of the booking room pursuant to the standard booking procedure for prisoners at the FBI's Miami Field Office.  They took Mr. Qazi into the booking area where they gave him basic directions regarding how to be fingerprinted and photographed.  Mr. Qazi's responses were indicative of someone who completely understood the questions that were being asked.

After the booking process was completed, Special Agents Clancy and Ferlazzo took Mr. Qazi to one of the interview rooms.  No other agents were present during the interview of Mr. Qazi.  They removed his handcuffs and offered him food and water and a place to sit at the desk.  Special Agent Ferlazzo read word for word the FD-395 "Advice of Rights" Form ("Federal Bureau of Investigation Advice of Rights" form) to Mr.

2

Qazi and provided the form to Mr. Qazi and gave him an opportunity to read it. (Government's Exhibit 1). They asked Mr. Qazi if he had any questions about his rights or what was on the form.  Mr. Qazi told them he did not, signed the form, and indicated that he understood all of his rights and would like to speak with Special Agents Clancy and Ferlazzo.  Special Agents Clancy and Ferlazzo signed the form as witnesses. (Government's Exhibit 1)  Mr. Qazi appeared to be following along nodding his head as the rights were read to him.   Mr. Qazi understood the rights that were read to him.

The interview began around 2:45 p.m. and ended around 7 p.m. with breaks throughout the duration to accommodate Mr. Qazi's requests to use the bathroom, to wash prior to prayer, to pray and to eat.  Throughout the first part of the interview, Mr. Qazi denied knowledge of an attack or planning an attack.  Special Agents Clancy and Ferlazzo asked Mr. Qazi about his travel to New York and he repeatedly said he went to New York to find work.  They talked about Mr. Qazi's travel to Pakistan, about training he received and computer internet activity while he was in Pakistan.  Special Agents Clancy and Ferlazzo had several surveillance photographs on their side of the table that Mr. Qazi asked to see and was shown.  (Government's Exhibit 2).  Mr. Qazi asked what the photographs were and Special Agents Clancy and Ferlazzo told him that they were surveillance photographs taken as part of the investigation.  Special Agent Clancy described the photographs taken of one of Mr. Qazi's associates as well as his brother and co-defendant, Sheheryar Qazi, and other family members, including their father, and Sheheryar's wife and son.[2]  The agents explained to Mr. Qazi that Sheheryar Qazi

---

[2] Special Agent Clancy described the persons in the photographs in the Government's Exhibit 2 as follows:
Pages 1 and 2 contain a total of three photographs of Halim Manhanlall, one of Mr. Qazi's associates;

3

had been arrested.[3]  They did not mention any sort of criminal liability or wrongdoing on the part of his father or Sheheryar's wife.  The agents did not tell Mr. Qazi that any other family member could be arrested.

After allowing Mr. Qazi to explain his travel to New York early on in the interview, Special Agents Clancy and Ferlazzo began to transition into confronting Mr. Qazi with evidence from their investigation.  Special Agents Clancy and Ferlazzo showed Mr. Qazi the photograph of Sheheryar holding his son (Government's Exhibit 2, Page 4 (bottom)) and told him that Sheheryar had been arrested and that the nature of their activities was very serious and they had jeopardized the relationship that Sheheryar had with his son.  The agents told Mr. Qazi not to make matters worse by lying and attributing things to his brother that he in fact had done.  Special Agent Clancy and Ferlazzo knew that the brothers were very close and knew that Mr. Qazi respected his brother, Sheheryar.  They told Mr. Qazi that it was time for him to start to take responsibility for what he had done. They told Mr. Qazi that they knew his brother, Sheheryar, was involved with the attack planning and wanted to know the details of Sheheryar's involvement.

Special Agent Clancy asked Mr. Qazi about the photograph of Sheheryar holding his son (Government's Exhibit 2, Page 4 (bottom)) when he questioned Mr. Qazi about

---

Page 3 contains two photographs: the top photograph is of Mr. Qazi; the bottom photograph is of his brother, Sheheryar Qazi, with his wife and son;
Page 4 contains two photographs: the top photograph is of Sheheryar Qazi, with his wife and son; the bottom is of Sheheryar's wife (seated), Mr. Qazi's and Sheheryar's father, Sheheryar holding his son, and Mr. Qazi partially behind a tree; and
Page 5 contains one aerial photograph of the mosque that Mr. Qazi attended.

[3]Sheheryar Qazi was arrested the same day as Mr. Qazi.  According to the Government, it was a probable cause arrest and the case was indicted the next day.

whether the internet research was his or Sheheryar's. Special Agents Clancy and Ferlazzo questioned Mr. Qazi about internet searches regarding radical Islam and explosives. Mr. Qazi admitted that he had done those searches, but explained that the searches were done purely out of curiosity and that he had an interest in chemistry. Mr. Qazi further explained that his interest in radical Islam was to debate the issues of suicide bombing and the permissibility of killing civilians.

     Subsequently, Special Agent Clancy and Ferlazzo confronted Mr. Qazi with recorded statements of his brother, Sheheryar, to third parties that Mr. Qazi was preparing for an attack. Special Agent Clancy noticed a change in Mr. Qazi's body language that indicated that Mr. Qazi started to realize that there was a lot of evidence and that his story was not making sense. Mr. Qazi told them that he at one time had planned for an attack in the United States and started planning, but that he changed his mind.

     Special Agents Clancy and Ferlazzo also confronted Mr. Qazi with a recorded telephone conversation that Mr. Qazi made from New York to his brother, Sheheryar, two days before their arrests. Mr. Qazi agreed that the call indicated that he was still planning an attack in the United States. In that recorded telephone conversation, Mr. Qazi was contemplating returning to Miami and Sheheryar assured Mr. Qazi that people would understand that he shaved his beard for Allah, that it was okay for him to come back and that he could train and continue to prepare.

     The only other major area of evidence that the agents addressed with Mr. Qazi was the collection of material that the FBI obtained from a trash pull, which was an envelope that had several e-mail addresses, user names, passwords, and the like. Mr. Qazi stated that he had used those e-mail addresses.

Based on the interview and his notes,[4] Special Agent Clancy prepared a brief statement that focused on the most important part of Mr. Qazi's statements regarding Mr. Qazi's attack planning in New York. Special Agent Clancy read the statement to Mr. Qazi, made sure that Mr. Qazi was comfortable with it, allowed Mr. Qazi to read and review the statement and then Mr. Qazi signed it. Special Agent Clancy did not offer Mr. Qazi anything in return for signing the statement where he admitted to planning an attack.

## ANALYSIS

Mr. Qazi seeks to suppress any written or oral admission or confession on the grounds that "in the course of his custodial interrogation on November 29, 2012, agents of the [FBI] coerced him into confessing by showing him a picture of his family and threatening to prosecute them if he did not sign a statement." Defendant Raees Qazi's Motion at 2 (DE# 166, 3/13/14). Mr. Qazi argues further that "the FBI had no probable cause to issue a threat to arrest Mr. Qazi's family, insofar as the threat included family members outside the scope of the investigation, and indeed, there was no evidence to implicate any individual other than his brother and co-defendant, Sheheryar Qazi." Id. Mr. Qazi contends that his statements were involuntarily given and that their use by the government would be in derogation of his Fifth Amendment right against self-incrimination. Id. at 1. Mr. Qazi requested an evidentiary hearing to determine the voluntariness of his statements and entry of an order suppressing any and all evidence obtained as a result of the custodial interrogation on November 29, 2012.

The right against self-incrimination is the constitutional basis for the requirement

---

[4]Mr. Qazi's interview was not recorded because it was not the practice in the FBI at the time to record custodial interviews.

6

that confessions must be voluntary in order to be admitted into evidence at trial. Dickerson v. United States, 530 U.S. 428, 433 (2000); Jackson v. Denno, 378 U.S. 368, 377 (1964); United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005) ("The Fifth Amendment prohibits the use of an involuntary confession against a defendant in a criminal trial.")(citing Bram v. United States, 168 U.S. 532, 542 (1897) (other citation omitted)).  The Due Process Clause prevents the government's use of involuntary confessions.  Miller v. Fenton, 474 U.S. 104, 109 (1985); Lego v. Twomey, 404 U.S. 477, 485 (1972) ("The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles.") (citing Rogers v. Richmond, 365 U.S. 534, 540-541 (1961) (footnote omitted)).  In order to establish a waiver of Miranda rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and intelligently waived those rights, with knowledge of the consequences of the waiver.  Colorado v. Connelly, 479 U.S. 157, 168 (1987); Moran v. Burbine, 475 U.S. 412, 421 (1986) ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception ...[T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements."); Lego, 404 U.S. at 489 ("[T]he prosecution must prove at least by a preponderance of the evidence that the confession was voluntary.").

To determine whether a statement was voluntary, the court must consider, given the totality of the circumstances, whether the confession was a product of rational intellect and free will. Townsend v. Sain, 372 U.S. 293, 307-08 (1962); Moran, 475 U.S. at 421 (Whether a valid waiver occurred will depend on the totality of the circumstances

7

surrounding an investigation.).  The focus of the fact-specific voluntariness inquiry is whether the confession was obtained through coercive means.  <u>United States v. Thompson</u>, 422 F.3d 1285, 1295 (11th Cir. 2000).  A statement is not voluntary if, for example, it is obtained by direct or implied promises, however slight; if it is obtained after subjecting the accused to an exhaustingly long interrogation; or if it is obtained after the application of, or the threat of, physical force.  <u>Colorado</u>, 479 U.S. at 163 n.1; <u>United States v. Mercer</u>, 541 F.3d 1070, 1075 (11th Cir. 2008).

     Mr. Qazi contends that the agents coerced him into confessing by showing him a picture of his family and threatening to prosecute them if he did not sign a statement.  Defendant's Motion to Suppress at 2 (DE# 166, 3/13/14).  A threat to charge a third party with a crime when the police do not have probable cause to charge can render a confession inadmissible.  <u>Thompson v. Haley</u>, 255 F.3d 1292, 1297 (11th Cir. 2001).  However, "whether a threat to prosecute a third party was coercive depends upon whether the state had probable cause to believe that the third party had committed a crime at the time that the threat was made."  <u>Id.</u> (citing <u>Martin v. Kemp</u>, 760 F.2d 1244, 1248-49 (11th Cir. 1985)).  In <u>Thompson</u>, the court rejected the defendant's argument that he confessed due to police coercion.  In <u>Thompson</u>, the Eleventh Circuit found no error in the admission of the confession because there was no police coercion when the police told the defendant that his girlfriend would be charged unless he confessed since the police had probable cause to arrest the girlfriend.  <u>Id.</u>

     In the present case, the special agents did not obtain Mr. Qazi's post-arrest confessions by threatening to arrest any of his family members.  While they did show him a photograph containing a number of family members, the only individual they mentioned was his brother, Sheheryar Qazi, who the defense concedes in the Motion

was implicated in the investigation. Defendant's Motion to Suppress at 2-3 (DE# 166, 3/13/14) ("[T]he FBI had no probable cause to issue a threat to arrest Mr. Qazi's family, insofar as the threat included family members outside the scope of investigation, and indeed, there was no evidence to implicate any other individual other than his brother and co-defendant, Sheheryar Qazi."). The special agents did not threaten Mr. Qazi with the arrest or prosecution of Sheheryar or any other family member. Sheheryar Qazi had been arrested and was down the hall from Mr. Qazi during his custodial interrogation by the special agents. The brothers were indicted by a Grand Jury the day after their arrests.

The undersigned finds that there is no evidence of false threats. Mr. Qazi's brother was arrested. Sheheryar Qazi's relationship with his son was going to be disrupted because Sheheryar Qazi was going to be in jail. Mr. Qazi was neither coerced nor threatened into making statements to law enforcement.

There is no evidence that Mr. Qazi was harassed or coerced by FBI Special Agent Clancy or FBI Special Agent Ferlazzo. FBI Special Agent Clancy described a relaxed atmosphere inside the interview room. The FBI Special Agents inside the interview room were unarmed and the defendant was not handcuffed. The interview lasted approximately four hours with breaks throughout its duration to accommodate Mr. Qazi's requests to use the bathroom, to wash prior to prayer, to pray, and to eat.

The undersigned finds that whatever effect the agents' statements had on Mr. Qazi, they did not "overbear [his] will to resist and bring about confessions not freely self-determined." See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (explaining that the use of coerced confessions is prohibited because the method used to extract them offends constitutional principles) Id. at 540-41. The undersigned finds that the special

9

agents did not coerce a confession from defendant Mr. Qazi and Mr. Qazi's confession was voluntary. Accordingly, it is recommended that the defendant's motion to suppress his oral and written statements should be **DENIED**.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Defendant Raees Qazi's Motion to Suppress Any Written or Oral Admission or Confession (DE# 166, 3/13/14) be **DENIED.** Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Beth Bloom, United States District Judge, **within ten (10) days of receipt of a copy of this Report and Recommendation**. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 30th day of June, 2014.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
United States District Judge Bloom
All counsel of record