```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                  FORT LAUDERDALE DIVISION
                CASE NO. 0:12-cr-60298-BB-2
 3

 4   UNITED STATES OF AMERICA,

 5           Plaintiff,              March 12, 2015
                                    10:18 a.m.
 6        vs.

 7   SHEHERYAR ALAM QAZI,

 8           Defendant.              Pages 1 THROUGH 34

 9   _____

10
                   TRANSCRIPT OF PLEA COLLOQUY
11
                BEFORE THE HONORABLE BETH BLOOM
12               UNITED STATES DISTRICT JUDGE

13
     Appearances:
14
     FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
15                       KAREN E. GILBERT, AUSA
                         ADAM S. FELS, AUSA
16                       99 Northeast 4th Street
                         Miami, Florida 33132
17

18   FOR THE DEFENDANT:  WILLIAM R. BARZEE, ESQ.
                         40 Northwest 3rd Street
19                       Penthouse 1
                         Miami, Florida 33128
20

21   COURT REPORTER:     Yvette Hernandez
                         U.S. District Court
22                       400 North Miami Avenue, Room 10-2
                         Miami, Florida 33128
23                       yvette_hernandez@flsd.uscourts.gov

24

25
```

```
 1        (Call to order of the Court, 10:18 a.m.)

 2             THE COURT:  Good morning.  How is everyone?  Have a

 3   seat.

 4             COURTROOM DEPUTY:  Calling Case Number 12-60298,

 5   Criminal, United States of America v. Sheheryar Alam Qazi.

 6             Counsel, please state your appearances for the record.

 7             MS. GILBERT:  Good morning, Your Honor.  Karen Gilbert

 8   on behalf of the United States, with Adam Fells, Jennifer Levy,

 9   from the Department of Justice, National Security Division, and

10   Paul Carpinteri, Special Agent with the FBI.

11             MR. BARZEE:  Good morning, Your Honor.  William Barzee

12   on behalf of Sheheryar Qazi, who is present in court.

13             THE COURT:  Good morning, Mr. Barzee.

14             What is the status of case?

15             MR. BARZEE:  Your Honor, Mr. Qazi, at this time, would

16   like to change his previously-entered not guilty plea and enter

17   a guilty plea to two counts of the superseding indictment.

18             We have a plea agreement and a signed factual proffer

19   before the Court.

20             THE COURT:  All right.  Thank you, sir.

21             Mr. Qazi, do you speak English, sir?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Is it your intention to change your

24   previously-entered pleas of not guilty to guilty?

25             THE DEFENDANT:  Yes, ma'am.
```

```
 1              THE COURT:  Sir, let me ask that you raise your right
 2       hand to be placed under oath.
 3          SHEHERYAR ALAM QAZI, DEFENDANT, SWORN
 4              THE COURT:  Please state your full name.
 5              THE DEFENDANT:  Sheheryar Alam Qazi.
 6              THE COURT:  Mr. Qazi, you understand that you are now
 7       under oath and if you answer any of my questions falsely your
 8       answers may later be used against you in a prosecution for
 9       perjury or making a false statement?
10              THE DEFENDANT:  Yes, ma'am.
11              THE COURT:  And you and Mr. Barzee may have a seat,
12       sir.
13              Mr. Qazi, how old are you, sir?
14              THE DEFENDANT:  Thirty-two.
15              THE COURT:  And do you fully read and write in
16       English?
17              THE DEFENDANT:  Yes, ma'am.
18              THE COURT:  How far did you go in school, sir?
19              THE DEFENDANT:  High school.
20              THE COURT:  Sir, have you been treated recently for
21       any mental illness or addiction to narcotic drugs of any kind?
22              THE DEFENDANT:  No, ma'am.
23              THE COURT:  Right now, Mr. Qazi, are you under the
24       influence of any drugs, medication, or alcoholic beverages of
25       any kind?
```

1               THE DEFENDANT:  No, ma'am.

2               THE COURT:  Have you received a copy of the

3       superseding indictment that is pending against you?

4               THE DEFENDANT:  Yes.

5               THE COURT:  Have you had a full opportunity to review

6       the superseding indictment, as well as discuss the case in

7       general with your attorney, William Barzee?

8               THE DEFENDANT:  Yes.

9               THE COURT:  And have you had a full opportunity to do

10      so before today?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And are you fully satisfied with the

13      counsel, representation, and advice given to you in this case

14      by your attorney, Mr. Barzee?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Before the Court is a five-page plea

17      agreement.  Did you read and discuss the plea agreement with

18      Mr. Barzee before you signed it?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Does this plea agreement represent in its

21      entirety the understanding that you have with the United States

22      Government?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Do you fully understand each and every

25      term of the plea agreement?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Has anyone made any promises or assurances

3    to you that are not contained in the plea agreement in order to

4    get you to accept it?

5           THE DEFENDANT:  No.

6           THE COURT:  Has anyone threatened you in any way to

7    persuade you to accept the agreement?

8           THE DEFENDANT:  No.

9           THE COURT:  Pursuant to the plea agreement, you agree

10   to plead guilty to Counts 2 and 6 of the superseding

11   indictment, which charge you with conspiring to provide

12   material support to terrorists, in violation of Title 18,

13   United States Code, Section 2339A, Subsection A, and with

14   conspiring to forcibly assault a federal employee, in violation

15   of Title 18, United States Code, Section 371.

16           Is that your understanding, sir?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  And you understand that the Office of the

19   United States Attorney agrees to dismiss Counts 1, 3, 4, 5, 8,

20   and 10 of the superceding indictment after sentencing?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  And you understand that they will make a

23   motion at that time, pursuant to the plea agreement, once the

24   sentence is imposed by the Court?

25           THE DEFENDANT:  May I have a moment, please?

```
1          (Pause in proceedings.)

2               THE DEFENDANT:  Yes, ma'am.  I understand.

3               THE COURT:  You understand, sir, that the terms of

4     this plea agreement are merely recommendations to the Court?  I

5     can reject the recommendations without permitting you to

6     withdraw your pleas of guilty.

7               THE DEFENDANT:  Yes, ma'am.

8               THE COURT:  Count 2 of the indictment reads the

9     following:  "Beginning on a date unknown to the Grand Jury, but

10    no later than July 2011, and continuing through on or about

11    November 29th, 2012, in Broward County, in the Southern

12    District of Florida and elsewhere, the Defendants, Raees Alam

13    Qazi, also known as Shan, and Sheheryar Alam Qazi, did

14    knowingly combine, conspire, confederate, and agree with each

15    other and with others known and unknown to the Grand Jury to

16    provide material support and resources as defined in Title 18,

17    United States Code, Section 2339A, Subsection B, Subsection 1,

18    including, but not limited to, property, service, including

19    financial services, lodging, communications equipment, and

20    personnel, knowing and intending that they be used in

21    preparation for and in carrying out a violation of Title 18,

22    United States Code, Section 2332A, Subsection A, that is using

23    a weapon of mass destruction, all in violation of Title 18,

24    United States Code, Section 2339A, Subsection A.

25               How do you plead to that charge, sir?
```

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  How do you plead to that charge, sir?

 3              THE DEFENDANT:  Guilty.

 4              THE COURT:  Has anyone forced you or threatened you to

 5    enter your plea of guilty?

 6              THE DEFENDANT:  No, ma'am.

 7              THE COURT:  Has anyone made any promises or assurances

 8    to you, other than what's contained in the plea agreement, in

 9    order to get you to plead guilty?

10              THE DEFENDANT:  No, ma'am.

11              THE COURT:  Are you entering a plea of guilty on your

12    own free will?

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  Are you entering a plea of guilty,

15    Mr. Qazi, because you are, in fact, guilty of that offense?

16              THE DEFENDANT:  Yes, ma'am.

17              THE COURT:  Count 6 of the superseding indictment

18    reads the following:  "Beginning on a date unknown to the Grand

19    Jury, and continuing through on or about April 8th, 2014, in

20    Miami-Dade County, in the Southern District of Florida, the

21    Defendants, Raees Alam Qazi, also known as Shan, and Sheheryar

22    Alam Qazi, did knowingly and willfully combine, conspire,

23    confederate, and agree with each other to commit an offense

24    against the United States, that is to forcibly assault, resist,

25    oppose, impede, intimidate, and interfere with and inflict
```

1    bodily injury upon Sebastian Barrois and Michael Norwood,

2    officers and employees of the United States Marshals Service,

3    an agency and a branch of the United States Government, while

4    they were engaged in and on account of the performance of their

5    official duties, in violation of Title 18, United States Code,

6    Sections 111, Subsection A, Subsection 1, and 111, Subsection

7    B.

8            "It was the purpose and object of the conspiracy to

9    simultaneously and forcibly assault Deputy United States

10   Marshals and inflict bodily injury upon them.  The manner and

11   means by which the Defendants sought to accomplish the purpose

12   and object of the conspiracy included, among other things,

13   distracting Deputy United States Marshals and then

14   simultaneously and forcibly assaulting and inflicting bodily

15   injury upon them.

16           "Overt Acts.  One, on or about April 8th, 2014, Raees

17   Alam Qazi and Sheheryar Alam Qazi, while being moved within the

18   United State Courthouse complex, simultaneously motioned with

19   their heads to cause the United States -- the Deputy United

20   States Marshals to look at the ceiling."

21           "Two, on or about April 8th, 2014, Raees Alam Qazi and

22   Sheheryar Alam Qazi, while the Deputy United States Marshals

23   were momentarily distracted, simultaneously punched them in the

24   face and struggled with them."

25           "Three, on or about April 8th, 2014, Raees Alam Qazi

1    and Sheheryar Alam Qazi, while struggling with the Deputy

2    United States Marshals, attempted to use potentially lethal

3    force on them."

4           "Four, on or about April 8th, 2014, Raees Alam Qazi

5    and Sheheryar Alam Qazi, while struggling with the Deputy

6    United States Marshals, simultaneously exclaimed 'Allahu

7    Akbar,' an Arabic exhortation meaning 'God is great,' all in

8    violation of Title 18, United States Code, Section 371."

9           How do you plead to that charge, sir?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  Has anyone forced you or threatened you to

12   enter your plea of guilty to that charge?

13          THE DEFENDANT:  No.

14          THE COURT:  Has anyone made any promises or assurances

15   to you, other than what's contained within the plea agreement,

16   in order to get you to plead guilty to this charge?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Are you entering a plea of guilty on your

19   own free will?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Are you entering a plea of guilty because

22   you are, in fact, guilty of that offense?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  And you understand, sir, that the offense

25   to which you are pleading guilty is a felony offense?  If your

1  plea is accepted by the Court, you will be adjudicated of that

2  offense and that adjudication may deprive you of valuable civil

3  rights, such as the right to vote, the right to hold public

4  office, the right to serve on a jury, and the right to possess

5  any kind of firearm.

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Have you discussed the possible

8  immigration consequences of a guilty plea with your attorney?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  And you understand, sir, that if you are

11  not a citizen of the United States, in addition to the other

12  possible penalties you are facing, a plea of guilty may subject

13  you to deportation, exclusion, or voluntary departure, and

14  prevent you from obtaining United States citizenship?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Have you and Mr. Barzee discussed the

17  advisory sentencing guidelines and how they might apply in your

18  case?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  And you understand that I will not be able

21  to determine the advisory guideline range for your case until

22  after the Presentence Report has been completed and you and the

23  Government have had the opportunity to challenge the reported

24  facts and the application of the guidelines recommended by the

25  probation officer, and the sentence ultimately imposed may be

1    different from any estimate your attorney may have given you?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Mr. Qazi, do you understand that the Court

4    may impose a statutory maximum term of imprisonment of up to 15

5    years for Count 2, followed by a term of supervised release up

6    to life?  Do you understand that, sir?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Do you understand that as to Count 6 the

9    Court may impose a statutory term of imprisonment of up to five

10   years, followed by a term of supervised release of up to three

11   years?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand, sir, that in addition

14   to a term of imprisonment and supervised release, the Court may

15   impose a fine of up to $250,000 for each count?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Do you understand that, in addition to

18   those penalties, that the Court will impose a special

19   assessment in the amount of $200, to be paid at the time of

20   sentencing, and if you are unable to pay the special

21   assessment, you understand that you have the duty to present

22   evidence at the time of sentencing as to the reasons for your

23   failure to pay?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Pursuant to the plea agreement, Mr. Qazi,

1   you understand that, pursuant to the United States Sentencing

2   Guideline 3A1.4, the offense alleged in Count 2 of the

3   superseding indictment is a felony that involves a federal

4   crime of terrorism?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And you understand that specifically with

7   regard to that provision, 3A1.4, if the offense is a felony

8   that involved or was intended to promote a federal crime of

9   terrorism that the base level is increased by 12.  But if the

10  resulting offense level is less than Level 32, it is increased

11  to Level 32.  Do you understand that, sir?

12         THE DEFENDANT:  Excuse me, Judge.  May I have a moment

13  with Mr. Barzee?

14         THE COURT:  Certainly.

15     (Pause in proceedings.)

16         THE DEFENDANT:  I understand, Judge.

17         THE COURT:  I want to make sure you understand, sir,

18  that, with regard to that specific provision of the plea

19  agreement, you and the Office of the United States Attorney

20  agree that, pursuant to the United States Sentencing Guideline,

21  Section 3A1.4, the offense alleged in Count 2 of the

22  superseding indictment is a felony that involved a federal

23  crime of terrorism.  You agree that, although it is not binding

24  on the Probation office or the Court, that jointly

25  recommended -- that is, you and the Office of the United States

1   Attorney, will recommend that the upward adjustment described

2   in the United States Sentencing Guideline 3A1.4 should apply to

3   the calculation of your advisory guideline sentence for Count 2

4   of the superseding indictment.  Do you understand that, sir?

5           THE DEFENDANT:  I understand.

6           THE COURT:  Specifically, with regard to that

7   provision, it states the following:  "If the offense is a

8   felony that involved, or was intended to promote, a federal

9   crime of terrorism, increase by 12 levels.  But if the

10  resulting offense level is less than Level 32, increase to

11  Level 32.  In each such case, the defendant's criminal history

12  category from Chapter IV," which is the Criminal History and

13  Criminal Livelihood, "shall be Category 6."

14          Do you understand that, sir?

15          THE DEFENDANT:  I understand.

16          THE COURT:  Sir, you understand that the sentence has

17  not yet been determined by the Court?

18          THE DEFENDANT:  I understand.

19          THE COURT:  You understand that any estimate of the

20  probable sentencing range or sentence that you may receive,

21  whether that estimate comes from your attorney, from the Office

22  of the United States Attorney, or the Probation office is a

23  prediction, not a promise, that is not binding on this Court?

24          THE DEFENDANT:  I understand.

25          THE COURT:  Do you understand that any recommendation

1    that the Office of the United States Attorney makes to the

2    Court as to sentencing, whether pursuant to the agreement or

3    otherwise, is not binding on the Court and the Court may

4    disregard the recommendation in its entirety?

5              THE DEFENDANT:  I understand.

6              THE COURT:  Do you understand that you may not

7    withdraw your plea of guilty based on the Court's decision not

8    to accept any sentence recommendation made jointly by you and

9    the Office of the United States Attorney?

10             THE DEFENDANT:  I understand.

11             THE COURT:  Mr. Qazi, do you understand that after

12   your initial guideline range has been determined under the

13   United States Sentencing Guidelines, that I have the authority

14   in some circumstances to depart upward or downward from that

15   range and I will examine other statutory sentencing factors

16   that may result in the imposition of a sentence that is either

17   greater or lesser than the advisory guideline sentence?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Sir, do you understand that parole has

20   been abolished and if you are sentenced to prison you will not

21   be released on parole?

22             THE DEFENDANT:  I understand.

23             THE COURT:  Sir, do you understand that you have the

24   right to persist in your plea of not guilty?

25             THE DEFENDANT:  I understand.

```
 1            THE COURT:  That you have the right to a trial by

 2   jury?

 3            THE DEFENDANT:  Yes, ma'am.

 4            THE COURT:  At trial, you would be presumed to be

 5   innocent and the Government would have to prove your guilty

 6   beyond a reasonable doubt?

 7            THE DEFENDANT:  Yes, ma'am.

 8            THE COURT:  That you would have the right to the

 9   assistance of counsel for your defense, appointed by the Court,

10   if necessary, at trial and every other stage of the proceeding,

11   the right to see and hear all the witnesses and have them

12   cross-examined in your defense?

13            THE DEFENDANT:  Yes, ma'am.

14            THE COURT:  The right on your own part to decline to

15   testify unless you voluntarily elected to do so, and the right

16   to compel the attendance of witnesses to testify in your

17   defense?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  And Mr. Qazi, if you decided not to

20   testify or put on any evidence, those facts could not be used

21   against you?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  And do you understand that by entering

24   your pleas of guilty you will have given up your right to a

25   trial, as well as the other rights associated with a trial?
```

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  You understand any motions you wanted

 3   Mr. Barzee to file, any witnesses you wanted him to speak to,

 4   any further investigation of any kind will not take place

 5   because the litigation will end today?  Do you understand that,

 6   sir?

 7              THE DEFENDANT:  Yes, ma'am.

 8              THE COURT:  The plea agreement before the Court, that

 9   consists of five pages, bears your signature.  Did you sign it

10   after you fully read the agreement?

11              THE DEFENDANT:  Yes, ma'am.

12              THE COURT:  Did you sign it after you understood the

13   agreement?

14              THE DEFENDANT:  Yes, ma'am.

15              THE COURT:  And did you sign it after all your

16   questions were answered by your attorney?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Did you sign it on your own free will?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  Does this plea agreement represent the

21   entire agreement that you have with the Office of the United

22   States Attorney?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Are there any other agreements, promises,

25   representations, or understandings?
```

```
 1              THE DEFENDANT:  No, ma'am.

 2              THE COURT:  On Page 5 of the plea agreement, it bears

 3    your signature, dated today's date.  Is this your signature,

 4    Mr. Qazi?

 5              THE DEFENDANT:  Yes, ma'am.

 6              THE COURT:  As well as the signature of your attorney,

 7    Mr. Barzee?

 8              THE DEFENDANT:  Yes, ma'am.

 9              THE COURT:  Mr. Barzee, is that your signature?

10              MR. BARZEE:  It is, Your Honor.

11              THE COURT:  As well as on behalf of the United States

12    Attorney, Ms. Gilbert, is that your signature?

13              MS. GILBERT:  Yes, Your Honor.

14              THE COURT:  As well as Mr. Fels?

15              MR. FELS:  Yes, Your Honor.

16              THE COURT:  Before the Court is an eight-page factual

17    basis in support of the plea.  Mr. Qazi, did you read this,

18    sir?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  Did you fully understand it?

21              THE DEFENDANT:  Yes, ma'am.

22              THE COURT:  Did Mr. Barzee answer all of your

23    questions?

24              THE DEFENDANT:  Yes, ma'am.

25              THE COURT:  And on Page 8 of this factual basis in
```

1    support of the plea, is that your signature?

2            THE DEFENDANT:  It is.

3            THE COURT:  Now, this carries a date of March 10th,

4    2015.

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Did you have a full opportunity on that

7    date to have all of your questions answered?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  And Mr. Barzee, is this your signature?

10           MR. BARZEE:  Yes, Your Honor.

11           THE COURT:  As well as the signature of Ms. Gilbert?

12           MS. GILBERT:  Yes, Your Honor.

13           THE COURT:  And Mr. Fels?

14           MR. FELS:  Yes, Your Honor.

15           THE COURT:  If the Government will set forth an

16   independent factual basis for the pleas, please.

17           MS. GILBERT:  Yes, Your Honor.

18           If this case were to proceed to trial, the Government

19   would prove the following beyond a reasonable doubt:

20   Defendants, Raees Alam Qazi and Sheheryar Alam Qazi, conspired

21   with one another and others to provide material support to

22   terrorists, in violation of Title 18, United States Code,

23   Section 2339A, Subsection lower case A, which is Count 2.

24           They also conspired with one another to forcibly

25   assault federal employees, in violation of Title 18, United

1    States Code, Section 371, which was Count 6.

2         Further, Raees Alam Qazi attempted to provide material

3    support to a foreign terrorist organization, in violation of

4    Title 18, United States Code, Section 2339, capital B, which is

5    Count 5.  And Your Honor, just for clarity, obviously, this

6    factual basis goes to both Defendants because of the nature of

7    the conspiracy.

8         THE COURT:  I understand.

9         MS. GILBERT:  All right.

10         As to Count 2, beginning as early as July 11th and

11    continuing through November 29th, 2012, in the Southern

12    District of Florida and elsewhere, the Defendants conspired to

13    provide material support and resources, as defined in Title 18,

14    United States Code Section 2339, capital A, Subsection

15    lowercase B, 1, including, but not limited to, property,

16    service, including financial services, lodging, communications

17    equipment, and personnel, knowing and intending that they be

18    used in preparation for and in carrying out a violation of

19    Title 18, United States Code, Section 2332 lowercase A,

20    Subsection A, that is using a weapon of mass destruction.

21         Your Honor, there is a section that just pertains to

22    Raees.  Do you want me to wait?  Are we going to do this again,

23    or are we just reading it one time?

24         THE COURT:  I'd like it -- I'd like the factual

25    proffer as to each individual Defendant.  Thank you.

1    MS. GILBERT: Okay. The facts in support of the

2    counts are as follows: From mid-summer 2011 until November

3    2012, agents conducted a lengthy investigation into two

4    brothers from Oakland Park, Florida, suspected of planning a

5    terrorist attack. The investigation revealed that Raees Alam

6    Qazi, the younger brother, was going to initiate the attack and

7    that he was financially and emotionally supported by his older

8    brother, Sheheryar Alam Qazi. Although, Sheheryar Alam Qazi

9    likely did not know all the details of planned operation, he

10   encouraged his brother to succeed in his task. Both brothers

11   were arrested on November 29th, 2012, after Raees Alam Qazi

12   returned to Fort Lauderdale from an aborted attempt to launch

13   an attack involving a weapon of mass destruction in New York

14   City.

15        During the course of the investigation, evidence was

16   revealed that Raees Alam Qazi conducted significant computer

17   research regarding AQAP, which is "Al Qa'ida in the Arabian

18   Peninsula" and/or "Al Qa'ida." Also conducted research

19   regarding Anwar al-Awlaki, Inspire Magazine, and tools utilized

20   for violent jihad. Raees Alam Qazi participated in online

21   computer forums discussing violent jihad, and he maintained two

22   YouTube channels in which he discussed various topics,

23   including Anwar al-Awlaki and "Inspire."

24        While Raees Alam Qazi was in Pakistan between July

25   2011 and January 2012, he accessed a radical Islamic Internet

1    forum called "Ansar al-Mujahedeen English Forum" or "Ansar,"

2    using the screen name "alBaraa."  Raees Alam Qazi would later

3    admit in his post-arrest statement that he used this username

4    on this Ansar forum.

5         Raees Alam Qazi made numerous postings in this forum

6    as "alBaraa" related to Anwar al-Awlaki, "Inspire," and jihad.

7    YouTube comments made by Raees Alam Qazi in late 2011 and early

8    2012 further show his knowledge and familiarity with Anwar

9    al-Awlaki and "Inspire."

10        In July 2012, Raees Alam Qazi decided to rejoin the

11   Ansar radical Islamic forum, this time taking on the screen

12   name "Anwar Awlaki." Raees Alam Qazi admitted in his

13   post-arrest statement that he had also used the screen name on

14   either the Ansar forum or another forum.

15        During this timeframe, Raees Alam Qazi recommended an

16   Al-Qa'ida-sponsored course on the manufacturing of explosives

17   to an individual seeking information on rocketry, explosives,

18   or other such weapons.

19        Both "Al-Qa'ida in the Arabian Peninsula" and

20   "Al-Qa'ida" are designated foreign terrorist organizations and

21   the Defendants knew that AQAP and Al-Qa'ida participated in

22   terrorist activity.

23        Anwar Al-Awlaki was a radical American-born AQAP

24   spiritual leader killed by drone strike in September of 2011.

25        "Inspire" is an online publication by AQAP and

1    Al-Qa'ida, which encourages brothers in the West to remain in

2    the West to conduct violent jihad operations, acts of

3    terrorism.  The publication provides instructions, including,

4    but not limited to, how to conduct attacks and how to select

5    targets for the attack.  There have been numerous issues of the

6    publications, and the first issue was available as early as the

7    summer of 2010.  Issue 9 was made available in May 2012, which

8    was the last issue published before the arrest of the

9    Defendants.  Various issues of Inspire Magazine had a section

10   entitled "Open Source Jihad," which provided information on how

11   to conduct jihad operations in the West.

12        Raees Alam Qazi's online computer research and posting

13   reveals that he was very well-versed with "Inspire," the fact

14   that it was a publication by a terrorist group, and that it

15   encourages brothers in the West to remain in the West to

16   conduct jihad operations, acts of terrorism.  Volumes of

17   "Inspire," which Raees Alam Qazi acknowledged reading,

18   contained lectures on the propriety of targeting non-Muslim

19   civilians, specific instructions on building an explosive

20   device out of common items, including Christmas three light

21   bulbs, and instructions on the use of encryption, the use of

22   Internet proxies and connecting to the Internet from places

23   other than his house.

24        MR. FELS:  During the course of his attack planning,

25   Raees Qazi followed direction of Al-Qa'ida and Al-Qa'ida AQAP.

1    On November 6th, 2011, Raees Alam Qazi sent an encrypted email

2    to AQAP Al-Qa'ida at an address listed at Inspire Magazine.

3    Surveillance of Raees Alam Qazi demonstrated that Raees Alam

4    Qazi followed many of the directions contained in "Inspire,"

5    including the use of Internet proxies and connecting to the

6    Internet from places other than his house.

7            Sheheryar Alam Qazi was well-aware that Raees Alam

8    Qazi was in contact with Al-Qa'ida and that he supported his

9    brother's efforts to support the terrorists.  In a recorded

10   August 30, 2012 meeting between an FBI confidential human

11   source and Sheheryar Alam Qazi, Sheheryar Alam Qazi

12   acknowledged that, while Raees Alam Qazi was in Pakistan, he

13   tried to cross the border into Afghanistan, but couldn't find a

14   way to do it.  Sheheryar Alam Qazi confided that:  "I sent him

15   to go over to Afghanistan," and that, due to his support of

16   Raees Alam Qazi, Raees Alam Qazi came back to Sheheryar Alam

17   Qazi, rather than other family members, after that failed

18   attempt to enter Afghanistan.

19           Sheheryar Alam Qazi also acknowledged that Raees Alam

20   Qazi had been trying to reach the "guys from Yemen," Al

21   Qa'ida/AQAP, on the Internet and that they told him not to come

22   to Afghanistan because there were enough people, but instead to

23   do something in the US.

24           Sheheryar Alam Qazi stated that the guys from Yemen

25   were supposed to help Raees Alam Qazi, but no help had been

1   rendered to date, and Raees Alam Qazi was no longer waiting.

2        Sheheryar Alam Qazi said that Raees Alam Qazi had to

3   train himself and would be a "lone wolf" like "Brother Faisal

4   Shahzad" who tried to conduct an attack on Comedy Central

5   building in New York.  The man whom Sheheryar Alam Qazi

6   referenced, Faisal Shahzad, had attempted to use a weapon of

7   mass destruction on the Comedy Central building before he was

8   apprehended by law enforcement officials.  Referencing a quote

9   attributed to the Prophet Muhammad, Sheheryar Alam Qazi stated

10  in the recording that Raees Alam Qazi had to be more patient

11  than the enemy, United States.

12        Raees Alam Qazi confirmed his submission to the will

13  of his Al Qa'ida handlers in a recorded September 15th, 2012,

14  meeting with another confidential human source.  After

15  expressing approval of a radical jihad-inspiring lecture of

16  Anwar Al-Awlaki's, entitled, "The Dust Never Settles," Raees

17  Alam Qazi confided that he was on a different course for jihad.

18  Raees Alam Qazi hinted that he would not be using an assault

19  rifle or RPG, but would be doing different things.  Raees Alam

20  Qazi explained that he had been in contact with representatives

21  from Al-Qa'ida and that if he is told by his leaders to stay in

22  the West, meaning the United States, then he would obey them.

23  Raees Alam Qazi continued:  "The leaders know what they are

24  talking about, so when they call on Muslims in the West to stay

25  in the West, there's a reason for that."  Raees Alam Qazi

1   suggested to the confidential human source that if the

2   confidential human source was serious about jihad, the

3   confidential human source could consider staying in Florida

4   because the confidential human source knew that area well,

5   including the famous places.

6          Recordings made during the course of the investigation

7   demonstrate that both Sheheryar Alam Qazi and Raees Alam Qazi

8   enjoyed listening to lectures by Anwar al-Awlaki and that both

9   Sheheryar Alam Qazi and Raees Alam Qazi expressed support for

10  Al-Qa'ida leader Osama bin Laden.  Raees Alam Qazi also

11  professed his support of jihad and to Al-Qa'ida, specifically

12  to a confidential human source, on a number of occasions.

13         Sheheryar Alam Qazi also professed his support of

14  jihad and to Al-Qa'ida specifically on a number of occasions,

15  as well as professing his support for his brother and his

16  brother's mission.  For example, Sheheryar Alam Qazi explained

17  that he was feeding his brother Raees and housing him for the

18  sake of Allah and did not want to force him to get a job which

19  might diminish his level of devotion and take him away from the

20  path of Allah.

21         On November 10th, 2012, Raees Alam Qazi conducted

22  online research on key chemicals used in manufacturing of a

23  weapon of mass destruction, such as ammonium nitrate, potassium

24  chlorate, and potassium nitrate.  All three chemicals are

25  commonly used as an oxidizer to accelerate the burning of

1    oxygen in a bomb explosion.

2            On November 23rd, 2012, Raees Alam Qazi was able to

3    shake the surveillance of the agents.  He had made arrangements

4    to travel by vehicle to New York City with another individual

5    and shaved his beard, which he had grown for religious reasons,

6    as part of his attack plans.

7            On November 27th, 2012, Raees Alam Qazi called

8    Sheheryar Alam Qazi to notify his brother that he had not been

9    successful in his task and to express concern that he would

10   have to return after having shaved his beard.  Sheheryar Alam

11   Qazi reassured his younger brother that he should "not give

12   importance to people while doing something for the sake of

13   Allah" and encouraged him to return to practice over here in

14   Florida, "Then you may return to New York.  You know, I will

15   give you complete freedom."

16           Agents regained surveillance of Raees Alam Qazi on

17   November 28th, 2012, when he boarded a bus to return to South

18   Florida.  Upon his return, both he and Sheheryar Alam Qazi were

19   arrested.

20           In his post-arrest, post-Miranda statement, Raees Alam

21   Qazi admitted that he traveled to New York to conduct an

22   attack.  He also admitted in his statement that he had taken

23   hints from an AQAP Al-Qa'ida online publication entitled

24   Inspire Magazine, including building an explosive device using

25   Christmas tree light bulbs.  Raees Alam Qazi also conceded that

```
 1    he had used information in "Inspire" to communicate with

 2    AQAP/Al-Qa'ida, including using an encryption program, using

 3    Internet proxies, and connecting to the Internet from places

 4    other than his house, and that his communications with

 5    Al-Qa'ida dealt with his desires to launch an attack in the

 6    United States.

 7           While Sheheryar Alam Qazi did not know all of the

 8    details of his brother's attack plans, he was aware that Raees

 9    Alam Qazi was planning on using a weapon of mass destruction

10    and agreed to provide him with support, including lodging,

11    food, and a computer to be used to research the Internet, so

12    that his brother Raees would be successful in his plans to use

13    a weapon of mass destruction.  While Raees Alam Qazi was in New

14    York, Sheheryar Alam Qazi actively misled friends and family

15    members about Raees Alam Qazi's true whereabouts and

16    activities.

17           And that's the entirety of the proffer.

18           THE COURT:  There's an additional ...

19           MR. FELS:  I'm sorry.  That's right.  There's -- yes,

20    in Count 6.

21           For Count 6, the proffer is:  The Defendants further

22    conspired to commit an offense against the United States, that

23    is to forcibly assault, resist, oppose, impede, intimidate, and

24    interfere with, and inflict body injury upon Sebastian Barrois

25    and Michael Norwood, officers and employees of the United
```

1    States Marshals Service, an agency in a branch of the United

2    States Government, while they were engaged in and on account of

3    the performance of their official duties.

4         The facts in support of this count are as follows: On

5    or about April 8th, 2014, Raees Alam Qazi and Sheheryar Alam

6    Qazi, while being moved within the United States Courthouse

7    complex in Miami, Florida, simultaneously motioned with their

8    heads to cause the Deputy United States Marshals to look at the

9    ceiling.  While the Deputy United States Marshals were

10   momentarily distracted, the Defendants simultaneously punched

11   them in the face and struggled with them.  Raees Alam Qazi and

12   Sheheryar Alam Qazi, while struggling with the Deputy United

13   States Marshals, attempted to use potentially lethal force on

14   them.  And while struggling with the Deputy United States

15   Marshals, the Defendants simultaneously exclaimed "Allahu

16   Akbar," an Arabic exhortation meaning "God is Great."

17        THE COURT:  Thank you, Mr. Fels.

18        Mr. Fels, did the Deputy United States Marshal incur

19   any bodily injury as a result of Count 6?

20        MR. FELS:  They did incur bodily injury.  They

21   incurred bruises, Your Honor.

22        THE COURT:  All right.  Thank you, sir.

23        Mr. Qazi, did you hear the factual proffer set forth

24   by Ms. Gilbert and Mr. Fels?

25        THE DEFENDANT:  Yes, ma'am.

```
1          THE COURT:  Are you in agreement with that factual

2   proffer?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Is it true?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Sir, the elements of conspiracy are the

7   following:  "A conspiracy is an agreement by two or more people

8   to commit an unlawful act.  It is a partnership for criminal

9   purposes.  Every member of a conspiracy becomes the agent or

10  partner of every other member.  The Government does not have to

11  prove that all the people named in the indictment were members

12  of the plan or that those who were members made any kind of

13  formal agreement.  The Government does not have to prove that

14  the members planned together all of the details of the plan or

15  the overt acts that the indictment charges would be carried out

16  in an effort to commit the intended crime.  The heart of

17  conspiracy is the making of the unlawful plan itself, followed

18  by the commission of any overt act.  The Government does not

19  have to prove that the conspirators succeeded in carrying out

20  the plan.  You can be found guilty of the crime if all of the

21  following facts are proved beyond a reasonable doubt.

22          "Number one:  Two or more persons in some way agreed

23  to try to accomplish a shared and unlawful plan.

24          "Two, the defendant knew the unlawful purpose of the

25  plan and willfully joined in it.
```

1        "Three:  During the conspiracy, one of the

2   conspirators knowingly engaged in at least one overt act, as

3   described in the indictment, before the overt act was

4   committed, at or about the time alleged, with the purpose of

5   carrying out or accomplishing some object of the conspiracy.

6        "An overt act is any transaction or event, even one

7   that may be entirely innocent when viewed alone, that a

8   conspirator commits to accomplish some object of a conspiracy.

9        "A person may be a conspirator without knowing all the

10  details of the unlawful plan or the names and identities of all

11  the other alleged conspirators.

12       "If the Defendant played only a minor part in the

13  plan, but had a general understanding of the unlawful purpose

14  of the plan and willfully joined in the plan on at least one

15  occasion, that's sufficient for you to find the defendant

16  guilty."

17       Do you understand that those are the elements of that

18  offense?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  Mr. Barzee, did you receive all of the

21  discovery in this case?

22            MR. BARZEE:  Yes, Your Honor.  I have.

23            THE COURT:  Are you assured that the factual proffer

24  is consistent with the true facts in this case?

25            MR. BARZEE:  Yes, Your Honor.

```
 1              THE COURT:  Are you in agreement that if the
 2    Government had presented those facts at the time of trial that
 3    the Government would have met their burden of proving all of
 4    the elements of Count 2 and 6 of the superseding indictment?
 5              MR. BARZEE:  Yes, Your Honor.
 6              THE COURT:  And Mr. Qazi, are you in agreement as
 7    well?
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  And Mr. Barzee has reviewed with you all
10    of the discovery, sir?
11              THE DEFENDANT:  Yes, ma'am.
12              THE COURT:  Mr. Qazi, is it still your intention to
13    enter pleas of guilty to Counts 2 and 6 of the indictment?
14              THE DEFENDANT:  Yes, it is.
15              THE COURT:  Do you have any questions, sir?
16              THE DEFENDANT:  No, ma'am.
17              THE COURT:  It's the finding of the Court that in the
18    case of the United States of America v. Sheheryar Alam Qazi
19    that the Defendant is fully capable and competent, capable of
20    entering his informed pleas of guilty.
21              Mr. Qazi, before the Court is a factual basis, as the
22    Court referred to before.  Is this factual basis consistent
23    with the facts set forth by Ms. Gilbert and Mr. Fels?
24              THE DEFENDANT:  Yes, ma'am.
25              THE COURT:  And are these facts true?
```

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  The Court further finds that you're aware

 3     of the nature of the charges and the consequences of your

 4     pleas, and that your pleas of guilty to Counts 2 and 6 of the

 5     superseding indictment are a knowing and voluntary plea,

 6     supported by an independent basis in fact, containing each of

 7     the essential elements of the offense.  The pleas are therefore

 8     accepted and, Sheheryar Alam Qazi, you are adjudicated guilty

 9     of each of these offenses.

10              Mr. Qazi, the Court will set sentencing in your case

11     for Friday, June 5th, at 10:00 a.m., in this courtroom.

12              You and Mr. Barzee will be meeting with a probation

13     officer.  One of the most important documents the Court will be

14     relying upon will be the Presentence Investigation Report.  You

15     will be asked many questions with regard to your background.  I

16     would suggest that those answers be as thorough as possible,

17     since the Court will be relying upon those answers.

18              Following the completion of Presentence Investigation

19     Report, you and your attorney, together with the Government,

20     will have an opportunity to review the report.  You will be

21     able to file any objections to the report.

22              At the time of the sentencing, if there are any

23     individuals that would like to speak on your behalf, sir, if

24     you will have those individuals present on the morning of

25     sentencing, which, again, is Friday, June 5th, at 10:00 a.m, in
```

1    this courtroom.

2              Do you have any questions, Mr. Qazi?

3              THE DEFENDANT:  No, ma'am.

4              THE COURT:  Mr. Barzee, anything further, sir?

5              MR. BARZEE:  No, Your Honor.

6              THE COURT:  Ms. Gilbert, on behalf of the Government?

7              MS. GILBERT:  Not as to this Defendant, Your Honor.

8              THE COURT:  Thank you, sir.

9              MR. BARZEE:  Thank you, Your Honor.

10        (Proceedings concluded at 11:00 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   UNITED STATES OF AMERICA      )

 2   ss:

 3   SOUTHERN DISTRICT OF FLORIDA  )

 4                   C E R T I F I C A T E

 5        I, Yvette Hernandez, Certified Shorthand Reporter in

 6   and for the United States District Court for the Southern

 7   District of Florida, do hereby certify that I was present at

 8   and reported in machine shorthand the proceedings had the 12th

 9   day of March, 2015, in the above-mentioned court; and that the

10   foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12        I further certify that this transcript contains pages

13   1 - 34.

14        IN WITNESS WHEREOF, I have hereunto set my hand at

15   Fort Lauderdale, Florida this 17th day of September, 2015.

16

17                      /s/Yvette Hernandez
                        Yvette Hernandez, CSR, RPR, CLR
18                      Certified Shorthand Reporter
                        299 East Broward Boulevard
19                      Room 207-B
                        Fort Lauderdale, Florida 33301
20                      (954) 769-5686
                        yvette_hernandez@flsd.uscourts.gov
21

22

23

24

25
```